IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JEREMY DAVID JOHNSON, and iWORKS, INC.,,<br><br>Defendants. | **ORDER DENYING EMERGENCY MOTION FOR RECONSIDERATION OF DEFENDANT'S CUSTODY STATUS AND IMPOSITION OF A $1 MILLION EQUITY BOND**<br><br>Case No. 2:11-CR-00501- TS<br>District Judge Ted Stewart<br>Magistrate Judge David Nuffer |

Following two days of hearings, July 11 and 28, 2011, on the issue of detention or release of the defendant Jeremy Johnson, the following findings are made to support the decision that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required." 28 U.S.C. § 3142 (e).  For the record, the magistrate judge does find that release conditions could be fashioned for this defendant to reasonably assure safety of any other person and the community.  However, the risk of non-appearance is not manageable by pre-trial supervision.

Letters (docket no. 13) were submitted from highly credible, reliable, reputable people in St. George who express their complete trust in Jeremy Johnson.  I have no doubt as to the veracity of those writers who I do know by reputation, and I assume the same credibility of the others.  These letters are very significant in expressing the high regard and public generosity of the defendant.  The presence of many of these people in the courtroom on July 11 and July 28 attests to their high regard for him and interest in his welfare, consistent with the letters.

The bond form and property presented in Defendant's Emergency Motion for Reconsideration of Defendant's Custody Status and Imposition of a $1 Million Equity Bond

(document no. 21) will guarantee the court access to $1 million in property value if Mr. Johnson does not appear. The bond form might need some minor correction but is a remarkable demonstration of trust in Mr. Johnson by relatives and friends, and pledges $1 million in property that is largely free and clear of any encumbrance. If it were corrected and recorded, the bond would secure $1 million as a pledge for defendant's appearance.

However, testimony and evidence shows the bond would not actually "reasonably assure his appearance." The testimony and evidence show (a) defendant's extraordinary mobility by reason of his ownership of aircraft and experience with aircraft and international air travel in his own aircraft and commercial aircraft and his experience in overseas travel and overseas land ownership; and (b) unrebutted testimony of defendant's recent possession of millions of dollars of cash, gold and silver in safes and in a bunker location; the lack of any accounting for that property; unrebutted testimony that defendant said he had concealed metals and cash in at least three locations accessible only by helicopter; unaccounted income of tens of millions of dollars from October 2009 to late 2010 in the Elite Debit enterprise; defendant's continuing access to and possession of large amounts of cash on various occasions even after imposition of the Preliminary Injunction entered in the Nevada District Court in February 2011; statements made by defendant and close associates as to his intentions to relocate to Costa Rica; defendant's multiple trips to Costa Rica and intended travel at the time of his arrest; defendant's failure to declare his possession of large amounts of cash as he exited the country on various occasions since February 2011, and defendant's statements that he was concealing cash in various accounts and acquiring gold and silver for asset protection in the event of legal and regulatory challenges. At this preliminary stage, without adjudicating the ultimate truth of these allegations, there is a preponderance of evidence that one million dollars would not reasonably assure his appearance.

The pledging of one million dollars would normally be sufficient to ensure that anyone would appear at future proceedings.  But the record of this defendant's access to funds and mobility, coupled with the fact that he has in the recent past actually made a gift of $1 million in silver, shows that even that extraordinary sum is not sufficiently significant to ensure his appearance.  That sum, if forfeited by his close relatives and friends, could easily be repaid from concealed funds and assets making the property bond relatively meaningless.

Defense counsel proposed electronic monitoring and house arrest.  The defendant would undoubtedly be able to better assist in his defense if not in custody, but at present, the magistrate judge is not aware of means to adequately assure his appearance at future proceedings.  Electronic monitoring devices can be severed and persons can flee the jurisdiction of this court, and have done so in recent memory, even without a passport, and that possibility is heightened when a person has ready access to funds and means of flight as is the case here.

**ORDER**

IT IS HEREBY ORDERED that Defendant's Emergency Motion for Reconsideration of Defendant's Custody Status and Imposition of a $1 Million Equity Bond (document no. 21) is DENIED.

Dated this 29th day of July, 2011.

BY THE COURT

_____
Magistrate Judge David Nuffer