DAVID B. BARLOW, United States Attorney (#13117)
ROBERT C. LUNNEN, Assistant United States Attorney (#4620)
JASON R. BURT, Assistant United States Attorney (#11200)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah 84111
Telephone: (801) 524-5682



FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

DEC 05 2013

D. MARK JONES, CLERK
BY
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JEREMY JOHNSON, <br> SCOTT LEAVITT, <br> BRYCE PAYNE, <br> RYAN RIDDLE, <br> LOYD JOHNSTON, and <br> I WORKS, INC., <br><br> Defendants. | Case No. 2:11-cr-00501-DN <br><br> SECOND SUPERSEDING INDICTMENT <br><br> 18 U.S.C. § 371 (Conspiracy) (Count 1) <br> 18 U.S.C. § 1014 (False Statement to Bank) <br> (Counts 2-11); <br> 18 U.S.C. § 1343, 1349 (Wire Fraud ) (Counts <br> 12-32); <br> 18 U.S.C. § 1344 (Bank Fraud)(Counts 33-45); <br> 18 U.S.C. § 1005 (Participating in Fraudulent <br> Banking Activities (Counts 46-54); <br> 18 U.S.C. §1956(h) (Conspiracy to Commit <br> Money Laundering) (Count 55); <br> 18 U.S.C. § 1957 (Money Laundering) (Counts <br> 56-86) <br><br> Judge David Nuffer |

The Grand Jury charges:

At all times relevant to this Indictment:

### **THE PARTIES**

1.     Defendant JEREMY JOHNSON was an individual residing in the area of St.

George, Utah, and was the founder, sole owner, president, chief executive officer, and

1

mastermind of defendant IWORKS, INC. ('IWORKS') and related businesses, including other companies owned and controlled by JEREMY JOHNSON, some of which did business under fictitious business names (called 'DBAs'). IWORKS and these related businesses are sometimes sometimes referred to in this Indictment as the IWORKS Enterprise.

2. Defendant SCOTT LEAVITT was an individual residing in the area of St. George, Utah, and was a certified public accountant and finance manager for IWORKS and JEREMY JOHNSON. Among the duties LEAVITT performed for IWORKS and JEREMY JOHNSON were keeping the financial books, providing payroll and accounting services, and interacting with banks. LEAVITT was also a signatory on bank accounts for many companies and DBAs that were part of the IWORKS Enterprise.

3. Defendant BRYCE PAYNE was an individual residing in the area of St. George, Utah, and was an employee and at times acted as general manager of IWORKS.

4. Defendant RYAN RIDDLE was an individual residing in the area of St. George, Utah, and was an employee and at times general manager of IWORKS.

5. Defendant LOYD JOHNSTON was an individual residing in the area of St. George, Utah, and was manager of the merchant account department of IWORKS.

6. Defendant IWORKS was a Utah company with its headquarters at 249 East Tabernacle Street, Suite 200, in St. George, Utah. IWORKS was in the business of marketing products on many Internet websites and conducting credit card sales on those websites. IWORKS did business in its own name and in the names of other companies and DBAs. Consumers visited the web sites used by IWORKS and used credit cards to make online purchases of products marketed by IWORKS on those websites.

7. Each of the individual defendants exercised responsibility for and participated in

the acts and practices alleged in this Indictment, including but not limited to the operation of the IWORKS Enterprise, the formation of numerous corporate shells (non-operating companies referred to in this Indictment as "shell companies") that acted as "fronts" for defendant IWORKS, the IWORKS, the establishment of merchant bank accounts for the shell companies, and the transfer of funds between shell company bank accounts and other bank accounts established for the benefit of defendants JEREMY JOHNSON and IWORKS.

## BACKGROUND

### The Online Credit Card Sales Process

8.     Acceptance of Visa and Mastercard credit cards for online sales required IWORKS to establish merchant bank accounts at banks that were members of the Visa/MasterCard network.   Without merchant accounts, the IWORKS Enterprise could not accept credit cards for the sale of products online.

9.     In order to establish a merchant account, a merchant such as IWORKS must prepare and furnish an application to an agent of the merchant bank.

10.     The application must provide truthful information about the merchant and the merchant's products so the merchant bank's agent can determine whether the merchant meets the bank's requirements for establishing a merchant account.   This process is called "underwriting" the application.

11.     It is important for the merchant to meet the bank's underwriting requirements to protect credit card holders and the bank from fraud.

12.     Once the merchant bank's agent is satisfied that the merchant meets the bank's underwriting requirements, the merchant is accepted by the merchant bank and allowed to begin processing credit card sales using the bank's merchant account.

13.     When a credit card sale is made, the cardholder's bank issues an authorization stating the account is in good standing and there is sufficient credit for the purchase; after the authorization is received, the bank holding the company's merchant account credits that account and the money is transferred into the merchant's depository account for the merchant's use.

14.     By accepting a merchant and agreeing to process credit card sales for the merchant, a merchant bank also becomes responsible to return credit card charges that are reversed, or "charged back", by customers of the merchant who dispute charges on their credit card bills.

### IWORKS' Internet Marketing Program

15.     Beginning no later than 2006 and continuing until in or about April 2009, the IWORKS Enterprise maintained merchant accounts at various merchant banks and used them to conduct credit card sales to consumers on the Internet.   Defendant JEREMY JOHNSON was named the principal contact on these accounts.

16.     Among the products marketed by the IWORKS Enterprise on various IWORKS related Internet websites were a product for obtaining free private and government grants and a money-making product.  Websites used by the IWORKS Enterprise made deceptive claims for these products.  For example, grant websites lured customers with claims that government grants were available to stop foreclosures, pay down debt, purchase real estate, and pay personal expenses such as medical costs, home business start-up costs, utility bills, home repairs, groceries, emergency expenses, and Christmas presents.

17.     IWORKS' grant offers touted the ready availability of government grants to consumers with statements such as "Claim your grant money today", "Billions are given away every every year - now you can get your share!", "The secret of finding government money revealed",

4

'Information worth thousands of dollars - it's yours now risk free!' and "Millions of dollars are available now!'

18.    IWORKS' grant offers claimed government grants could be secured using 'revolutionary grant technology" in the form of 'risk free software' on a free CD containing 'everything you need to know to obtain your government grant." The CD was offered to consumers for a nominal amount such as $2.29 to cover the cost of shipping and handling.

### IWORKS' Credit Card Chargeback Problems

19.    Many consumers who ordered IWORKS' grant CDs found that the CD was not what it was represented to be.  They also found that their credit cards had been charged, or debited, not only for the shipping fee, but also for larger amounts for monthly memberships and other products they did not know about or intend to purchase.

20.    Many of these IWORKS customers called their banks or credit card companies to dispute the charges and asked to have them charged-back, reversing the process that took place at the time of the credit card sale.  This caused the disputed charges to be returned, or credited back to the complaining cardholders' accounts.

21.    In time the IWORKS Enterprise began incurring excessive chargebacks.  Two common reasons for excessive chargebacks are misrepresentations made by the merchant during the sales process and failure to adequately disclose important terms of the sale to consumers.

22.    Under rules regulating excessive chargebacks, credit card companies began placing IWORKS related companies in chargeback monitoring programs intended to reduce chargebacks.

23.    When chargebacks remained high, credit card companies imposed fines and assessments against IWORKS related companies as a further incentive to reduce chargebacks.

During the period 2006-2009 millions of dollars in such fines and assessments were imposed against companies that were a part of the IWORKS Enterprise.

### M.A.T.C.H. Listings of Defendants IWORKS and JEREMY JOHNSON

24.     In the spring of 2009, after the monitoring program and fines still failed to bring chargebacks under control, merchant banks began placing JEREMY JOHNSON, IWORKS, and related companies on the M.A.T.C.H. list (Member Alert to Control High-risk Merchants), also known as the TMF (Terminated Merchant File), and closed their merchant accounts because of high chargebacks.  The M.A.T.C.H. list provides merchant banks with the ability to review risk information about IWORKS and related companies before entering into a merchant agreement. These M.A.T.C.H. listings included the following:

A.     American Express placed JEREMY JOHNSON and a JEREMY JOHNSON related company named Market Funding Solutions on the M.A.T.C.H. list on April 19, 2009.

B.     HSBC Bank USA placed JEREMY JOHNSON and a JEREMY JOHNSON related company named Market Funding Solutions, DBA Natures Best Acai and NBAcai.com, on the M.A.T.C.H. list on April 27, 2009.

C.     Harris Bank placed JEREMY JOHNSON and thirteen JEREMY JOHNSON related companies on the M.A.T.C.H. list on May 20, 2009, including companies described as follows: BusinessFund 8004101682, GMP 8007102564, Grant Creator 8006542919, Easy Grant, 8882551241 Grant, www.mygrantsite.net, Quick Grant Pro, www.501C3CD.com, Web Save Club, www.SelfHelpFF.com, ViewGrantBiz.com, WebSaveClubGold.com, and Cost-Mash.com 800978.

D.     First Regional Bank placed JEREMY JOHNSON and an IWORKS

6

related company named I Works, Ltd. on the M.A.T.C.H. list on July 15, 2009.

      E.     National Bank of California placed JEREMY JOHNSON and a JEREMY JOHNSON related company named Cloud Nine Marketing on the M.A.T.C.H. list on October 21, 2009.

      25.    The M.A.T.C.H. listings of JEREMY JOHNSON, IWORKS, and related companies made it difficult, if not impossible, for JEREMY JOHNSON and the IWORKS Enterprise to establish new merchant accounts at merchant banks.

      26.    Without new merchant accounts, JEREMY JOHNSON and the IWORKS Enterprise could not continue selling products to credit card customers on the Internet. The M.A.T.C.H. listings of defendants IWORKS, JEREMY JOHNSON, and related companies therefore severely hampered the business of the IWORKS Enterprise and threatened its survival.

## COUNT 1
### 18 U.S.C. § 371
### (Conspiracy)

### THE CONSPIRACY

      27.    The Grand Jury incorporates by reference paragraphs 1 through 26 as if fully stated herein.

      28.    From in or about April 2009 through in or about January 2011, within the Central Division of the District of Utah, and elsewhere,

**JEREMY JOHNSON,**
**RYAN RIDDLE,**
**BRYCE PAYNE,**
**SCOTT LEAVIT,**
**LOYD JOHNSTON, and**
**IWORKS, INC.**

defendants herein, and others known and unknown to the grand jury, did willfully and knowingly

7

combine, conspire, confederate, and agree with each other, and with other persons known and unknown to the Grand Jury, to commit offenses against the United States, that is, violations of Title 18, United States Code, Section 1005 (Fraudulent Participation in Banking Activities); Title 18, United States Code, Section 1014 (False Statement to a Bank); Title 18, United States Code, Section 1343 (Wire Fraud), and Title 18, United States Code, Section 1344 (Bank Fraud), all in violation of Title 18, United States Code, Section 371.

## OBJECT OF THE CONSPIRACY

29.     It was the object of the conspiracy for the defendants, after the M.A.T.C.H. listings of IWORKS and JEREMY JOHNSON and closure of their merchant accounts, fraudulently to obtain new merchant accounts in other names from Wells Fargo in order to continue credit card sales on the Internet and in order to enrich themselves through the following manner and means.

## MANNER AND MEANS OF THE CONSPIRACY

30.     It was a part of the conspiracy that the defendants, rather than controlling chargebacks, devised and implemented a plan to fraudulently circumvent the M.A.T.C.H. listings of defendants JEREMY JOHNSON and IWORKS by conducting the business of the IWORKS Enterprise under other names.

31.     It was a part of the conspiracy that the defendants formed shell companies using company names and company owners other than defendants JEREMY JOHNSON and IWORKS.

32.     It was a part of the conspiracy that the shell companies had no legitimate business operations of their own, but were formed as a device to circumvent the M.A.T.C.H. listings of defendants JEREMY JOHNSON and IWORKS; to deceive merchant banks and their agents into

8

establishing new merchant accounts in the shell companies' names; and to permit the defendants to continue processing credit card sales on the Internet, notwithstanding the M.A.T.C.H. listings.

33.    It was a part of the conspiracy that the defendants recruited people to serve as straw owners of the shell companies.

34.    It was a part of the conspiracy that these straw owners were friends, family members, and business associates of the defendants and had no role with the shell companies, except to pose as owners of the shell companies.

35.    It was a part of the conspiracy that the defendants enlisted about 27 straw owners to form about 300 shell companies and DBAs.

36.    It was a part of the conspiracy that the defendants used the straw owners and shell companies and their DBAs to apply for merchant accounts with Wells Fargo.

37.    It was a part of the conspiracy that the defendants caused the preparation of numerous applications for new merchant accounts at Wells Fargo providing false and fraudulent statements to Wells Fargo and its agents, and did so by:

- Providing the name of a shell company as the applicant, when the true applicant was IWORKS;

- Giving the name of a straw owner as the owner of the business, when the true owner was JEREMY JOHNSON;

- Stating an address as if it was the location of an operating business, when in truth the applicant was a shell company with no business operations of its own and the address was merely a mail drop;

- Stating a telephone number as if it was a telephone number for an operating business, when in truth the applicant was a shell company with no operations of

9

its own and the telephone number was for a prepaid cellular phone used just to complete the application;

- Stating a number representing the number of employees of the business, when in truth the business was a shell company with no employees;

- Stating there were no other currently/previously owned businesses associated with the applicant, when in truth the applicant was a part of the IWORKS Enterprise owned and controlled by JEREMY JOHNSON;

- Stating a period of time during which the applicant had been in business, when in truth the applicant had never been an operating business;

- Certifying the truth of the statements on the application, when the application contained false and fraudulent statements;

- Stating that the applicant's web page accompanied the application, when in truth the included web page was a "dummy" web page that was not actually used to conduct sales on the Internet, was misleading, and was used by IWORKS to conceal from Wells Fargo and its agents the web page that IWORKS actually used to conduct sales;

- Providing web site URLs, passwords, and domain names of the applicant, when in truth they were used by IWORKS to deceive and mislead Wells Fargo and its agents and conceal the truth from them;

- Stating that merchant statements from previous processing were included, when in truth no such statements were provided, or the statements provided were not for previous processing by the named applicant; and

- Providing a personal guarantee by the straw owner, when in truth the straw owner

10

had insufficient credit to guarantee the merchant application and did not intend to do so.

38.     It was a part of the conspiracy that the defendants made and caused to be made these false and fraudulent statements on the shell company merchant applications to induce Wells Fargo and its agents to open new merchant accounts in the names of the shell companies and their DBAs.

39.     It was a part of the conspiracy that the defendants caused these false and fraudulent merchant applications to be submitted to CardFlex, Inc., an agent of Wells Fargo located in Costa Mesa, California, to influence CardFlex, Inc. to approve new merchant accounts for the shell companies on behalf of Wells Fargo.

40.     It was a part of the conspiracy that Wells Fargo established new merchant accounts for the shell companies based on these false and fraudulent merchant account applications.

41.     It was part of the conspiracy that the defendants caused the creation of new web sites for the shell companies and caused products formerly sold by IWORKS to be sold on those websites under new names, which is a process sometimes called "rebranding".

42.     It was a part of the conspiracy that the defendants formed shell companies, recruited straw owners, set up shell company websites, caused the preparation of false and fraudulent merchant account applications, established merchant accounts, and marketed and sold rebranded IWORKS products on the shell company websites, all with a purpose to conceal from Wells Fargo and its agents the true ownership and control of the shell companies.

43.     It was a part of the conspiracy that in truth and in fact the shell companies and their websites were owned and controlled by defendant JEREMY JOHNSON.

44. Because the rebranded products marketed by the shell companies and processed through the shell companies' merchant accounts were the same products previously marketed by the IWORKS Enterprise, and because they were marketed in the same manner as products previously marketed by the IWORKS Enterprise, chargebacks in the shell companies' merchant accounts increased over time.

45. It was a part of the conspiracy that when chargebacks in shell company merchant accounts reached excessive levels, the defendants caused those company merchant accounts to be terminated, caused new merchant accounts to be opened at Wells Fargo in the names of other shell companies, and caused rebranded IWORKS products to be sold in the new accounts. In this manner, the defendants repeatedly "burned" and "churned" shell company merchant accounts in order to deceive Wells Fargo and continue Internet sales.

## OVERT ACTS

46. In furtherance of the conspiracy and in order to accomplish its objectives, within the District of Utah and elsewhere, the defendants committed, and caused to be committed, the following overt acts:

A. On or about April 28, 2009, defendant LOYD JOHNSTON sent an email to defendant RIDDLE, with a copy to defendant LEAVITT, stating that setting up new corporations in other peoples' names "will only work if the acquiring bank doesn't recognize IWORKS."

B. April 30, 2009, defendant LOYD JOHNSTON emailed defendant RIDDLE describing the requirements for setting up new corporations in new names.

C. On or about May 11, 2009, defendant JEREMY JOHNSON sent a text message to defendant LOYD JOHNSTON stating "I am going to send u a list of people to open

corporations in their name."

D.      On or about May 11, 2009, defendant JEREMY JOHNSON instructed defendant LOYD JOHNSTON in a text message that new merchant accounts were needed "without my name on them."

E.      On or about May 12, 2009, defendant LOYD JOHNSTON emailed Defendant RIDDLE a recap of a May 11, 2009, text conversation between defendants JEREMY JOHNSON and LOYD JOHNSTON relating to the formation of shell companies in other peoples' names.

F.      On or about June 10, 2009, defendants RIDDLE and LOYD JOHNSTON co-authored an email sent by defendant RIDDLE to defendant JEREMY JOHNSON, with copies to defendants LEAVITT, PAYNE, and LOYD JOHNSTON, and addressed to "Jeremy/All" stating "what you see below is a current snapshot of the proposed processing plan going forward for IWORKS."

G.      In his June 10, 2009, email RIDDLE stated that the new processing plan "will require 5 different accounts . . . and [e]ach of these accounts will have their own corporation corporation . . . ." RIDDLE also said that "[t]he 5 corporations are being set up in names other than Jeremy's (we will be using these three people . . S.M., A.J., and L.H.–2 corps for A.[J.], 2 corps for S.[M.] and 1 corp for L.[H.]) [W]e have 2 of these corps in progress as CA companies and the others will be set up in Nevada.  We will be setting up additional corporations to be available for additional accounts/programs as they come up for IWORKS Core processing needs. These 'additional' corps will be set up under any of the three names previously mentioned unless Jeremy provides any new names. I will follow up with Jeremy to see if there are any additional names at this point, or see if he wants me to continue forward simply by using the ones he's

13

provided."

H.     In the same June 10, 2009, email, defendant RIDDLE asks the other defendants whether the proposed processing plan will "tip anyone over at Merituys or the bank?"

I.     On or about June 24, 2009, defendant JEREMY JOHNSON emailed defendant RIDDLE about the proposed processing plan, saying "I am ok with this but I still want back up merchant accounts (even if we just use them a tiny bit to keep them open) and I want many different corps so all the processing is broken out in many places and I want the ability to put shit processing in one of those corps not tied to us at all knowing full well it will blow up in a few months. But I am 100% with you on your plan but I want this stuff too even if we never use it."

J.     On or about May 19, 2009, the defendants caused Razor Processing, Inc. to file articles of incorporation in the State of California listing S.M. as owner.

K.     On or about July 10, 2009, the defendants caused Razor Processing, Inc. to apply for a checking account at Town & Country Bank of St. George, Utah, listing defendants LEAVITT and S.M. as signatories.

L.     On or about September 29, 2009, the defendants caused Razor Processing, Inc. to apply to a UPS store in Apple Valley, California for a mail drop address. The application listed S.M. as the customer.

M.     On or about October 29, 2009, an employee of IWORKS faxed or emailed a Wells Fargo merchant application for Razor Processing, Inc., DBA Click Money 4 Profit, from IWORKS' office in St. George, Utah to Mach 1 Merchanting, LLC's office in Idaho Falls, Idaho.

N.     On or about June 12, 2009, the defendants caused Lifestyles for Fitness, Inc., to file articles of incorporation in the State of Nevada listing M.H. as owner.

14

O.    In or about June, 2009, the defendants caused Lifestyles for Fitness, Inc. to apply for a mail drop address in Nevada.  The application listed M.H. as the customer.

P.    On or about July 1, 2009, the defendants caused Lifestyles for Fitness, Inc. to apply for a checking account at Far West Bank of St. George, Utah listing M.H. as a signatory.

Q.    On or about July 11, 2009, an employee of IWORKS faxed or emailed a Wells Fargo merchant application for Lifestyles for Fitness, Inc., DBA Big Money Search, from IWORKS' office in St. George, Utah, to Mach 1 Merchanting, LLC's office in Idaho Falls, Idaho.

R.    On or about August 18, 2009, the defendants caused eCom Success, Inc. to file articles of incorporation in the State of Delaware listing defendant LOYD JOHNSTON as incorporator.

S.    On or about September 3, 2009, the defendants caused  eCom Success, Inc. to apply to a UPS store in Middletown, Delaware, for a mail drop address.  The application listed defendant LOYD JOHNSTON as the applicant.

T.    On or about October 7, 2009, the defendants caused eCom Success, Inc. to apply for a checking account at Town & County Bank of St. George, Utah, listing defendants LEAVITT and JOHNSTON as signatories.

U.    On or about October 29, 2009, an employee of IWORKS faxed or emailed a Wells Fargo merchant application for eCom Success, Inc., DBA Quick Grants Now, from IWORKS' office in St. George, Utah, to Mach 1 Merchanting, LLC's office in Idaho Falls, Idaho,

all in violation of Title 18, United States Code, Section 371.

15

## COUNTS 2-11
### 18 U.S.C. § 1014
### (False Statement to Bank)

47.     The Grand Jury incorporates by reference paragraphs 1 through 46 as if fully set forth herein and charges that:

48.     On or about the dates listed in the chart below, in the Central Division of the District of Utah, and elsewhere,

**JEREMY JOHNSON,**
**SCOTT LEAVITT,**
**BRYCE PAYNE,**
**RYAN RIDDLE,**
**LOYD JOHNSTON, and**
**IWORKS, INC.**

defendants herein, aided and abetted by each other, did knowingly make false statements on merchant account applications, for the purpose of influencing the actions of Wells Fargo Bank, an institution the accounts of which are insured by the Federal Deposit Insurance Corporation, in that the defendants stated and caused to be stated false information for the following entries on each of the merchant account applications listed in the chart below:

- Number of employees

- Other currently/previously owned businesses

- Number of years in business

- Owner/Officer certification

- Web page

- Web site URLs, Passwords, and Domain Names

- Months of merchant statements from previous processing,

when in truth and in fact, as defendants well knew, such statements on the merchant account

16

applications were false:

| Count | Shell Company | DBA | Owner | App. Date |
|---|---|---|---|---|
| 2 | GGL Rewards | Placing Ads Now | S.M. | 07/09/2009 |
| 3 | GGL Rewards | ClickMoneyShop.com | S.M. | 07/09/2009 |
| 4 | GGL Rewards | Ads 4 Profits | S.M. | 07/09/2009 |
| 5 | GGL Rewards | Advertising 4 Money | S.M. | 07/09/2009 |
| 6 | Business Loan Success | Alternative Funding | S.M. | 07/15/2009 |
| 7 | Business Loan Success | My Alternative Funds | S.M. | 08/18/2009 |
| 8 | Net Business Success | Be a Rebate Millionaire | M.J. | 02/03/2010 |
| 9 | Balance Processing | Web Search Profit By Clicking | T.J. | 03/05/2010 |
| 10 | Net Fit Trends | Premium Grant Returns | R.J. | 03/10/2010 |
| 11 | Net Fit Trends | My Rebate Mill | M.S. | 03/26/2010 |

all in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNTS 12-32
### 18 U.S.C. § 1343
### (Wire Fraud)

49.     The Grand Jury incorporates by reference paragraphs 1 through 48 as if fully

stated herein.

50.     On or about the dates listed in the chart below, within the Central Division of the

District of Utah, and elsewhere,

**JEREMY JOHNSON,**
**RYAN RIDDLE,**
**BRYCE PAYNE,**
**SCOTT LEAVITT,**
**LOYD JOHNSTON, and**
**IWORKS, INC.,**

the defendants herein, aided and abetted by each other, knowingly devised and intended to devise

a scheme and artifice to defraud, and for obtaining money and property by means of materially

false and fraudulent pretenses, representations, and promises, and, for the purpose of executing

17

the scheme and attempting to do so, caused the transmission of writings, signs, and signals in interstate and foreign commerce, with each such wire transmission being a separate count of the Indictment:

| Count | Date of Wire Transmission (on or about) | Description of Wire Transmission in Interstate Commerce and Location of Sender and Recipient |
|---|---|---|
| 12 | 07/05/2009 | Wire transmission of a Merchant Account Application for Funding Success, DBA Fast Government Grants, by IWORKS (Utah) to Mach 1 Merchanting, LLC (Idaho) |
| 13 | 07/09/2009 | Wire transmission of a Merchant Account Application for GGL Rewards, DBA Advertising 4 Money, by IWORKS (Utah) to Mach 1 Merchanting, LLC (Idaho) |
| 14 | 07/10/2009 | Wire transmission of a Merchant Account Application for Lifestyles for Fitness, DBA My Ad Bonus, by IWORKS (Utah) to Mach 1 Merchanting, LLC (Idaho) |
| 15 | 07/10/2009 | Wire transmission of a Merchant Account Application for Lifestyles for Fitness, DBA Place Your Ad Now, by IWORKS (Utah) to Mach 1 Merchanting, LLC (Idaho) |
| 16 | 07/15/2009 | Wire transmission of a Merchant Account Application for Business Loan Success, DBA Alternative Funding, by IWORKS (Utah) to Mach 1 Merchanting, LLC (Idaho) |
| 17 | 08/10/2009 | Wire transmission of a Merchant Account Application for eBusiness First, DBA Grant Query, by IWORKS (Utah) toMach 1 Merchanting, LLC (Idaho) |
| 18 | 08/10/2009 | IWORKS (Utah) faxed or emailed a Merchant Account Application for eBusiness First, DBA Ask 4 Grants, by IWORKS (Utah) to Mach 1 Merchanting, LLC (Idaho) |
| 19 | 08/10/2009 | Wire transmission of a Merchant Account Application for eBusiness First, DBA Grant Endeavor, by IWORKS (Utah) to Mach 1 Merchanting, LLC (Idaho) |
| 20 | 08/10/2009 | Wire transmission of a Merchant Account Application for eBusiness First, DBA Hunt 4 Grants, by IWORKS (Utah) to Mach 1 Merchanting, LLC (Idaho) |
| 21 | 08/18/2009 | Wire transmission of a Merchant Account Application for Business Loan Success, DBA My Alternative Funds, by IWORKS (Utah) to Mach 1 Merchanting, LLC (Idaho) |
| 22 | 10/01/2009 | Wire transmission of a Merchant Account Application for eCom Success, DBA Grant Success Fast, by IWORKS (Utah) to Mach 1 Merchanting, LLC (Idaho) |
| 23 | 10/28/2009 | Wire transmission of a Merchant Account Application for eCom Success, DBA My Fast Grant Help, by IWORKS (Utah) to Mach 1 Merchanting, LLC (Idaho) |

| 24 | 10/28/2009 | Wire transmission of a Merchant Account Application for eCom Success, DBA Grant Cash Quick, by IWORKS (Utah) to Mach 1 Merchanting, LLC  (Idaho) |
| 25 | 10/29/2009 | Wire transmission of a Merchant Account Application for eCom Success, DBA Quick Grants Now, by IWORKS (Utah) to Mach 1 Merchanting, LLC (Idaho) |
| 26 | 10/29/2009 | Wire transmission of a Merchant Account Application for Razor Processing, DBA Click 4 Money Your Way, by IWORKS (Utah) to Mach 1 Merchanting, LLC (Idaho) |
| 27 | 10/29/2009 | Wire transmission of a Merchant Account Application for Razor Processing, DBA Click 4 Money My Way, by IWORKS (Utah) to Mach 1 Merchanting, LLC (Idaho) |
| 28 | 02/03/2010 | Wire transmission of a Merchant Account Application for Net Business Success, DBA Get Trim Moves, by IWORKS (Utah) to Blaze Processing (Idaho) |
| 29 | 02/03/2010 | Wire transmission of a Merchant Account Application for Net Business Success, DBA Be a Rebate Millionaire, by IWORKS (Utah) to Blaze Processing (Idaho) |
| 30 | 03/04/2010 | Wire transmission of a Merchant Account Application for Funding Success, DBA My Clicking Payday, by IWORKS (Utah) to Blaze Processing (Idaho) |
| 31 | 03/26/2010 | Wire transmission of a Merchant Account Application for Net Fit Trends, DBA Alternative Funds for You, by IWORKS (Utah) to Blaze Processing (Idaho) |
| 32 | 03/29/2010 | Wire transmission of a Merchant Account Application for Net Fit Trends, DBA Rebate Millionaire Today, by IWORKS (Utah) to Blaze Processing (Idaho) |

all in violation of Title 18, United States Code, Sections 1343, 1349 and 2.

**COUNTS 33-45**
**18 U.S.C. § 1344(2)**
**(Bank Fraud)**

51.     The grand jury incorporates by reference paragraphs 1 through 50 as if fully

stated herein.

52.     From in or about April 2009 through in or about January 2011, within the Central

Division of the District of Utah, and elsewhere,

**JEREMY JOHNSON,**
**RYAN RIDDLE,**
**BRYCE PAYNE,**

19

**SCOTT LEAVITT,**
**LOYD JOHNSTON, and**
**IWORKS, INC.,**

the defendants herein, aided and abetted by each other, executed and attempted to execute a scheme and artifice to obtain moneys, funds, credits, assets, securities, and other property owned by or under the custody or control of Wells Fargo Bank, a financial institution the accounts of which are insured by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent pretenses, representations, and promises, in that the defendants submitted and caused to be submitted fraudulent merchant account applications to Wells Fargo Bank for the purpose of establishing merchant accounts for processing online credit card sales, and caused such sales to be processed using the fraudulently established merchant accounts, with each such application listed below being a separate count of the Indictment:

| Count | Shell Company | DBA | Owner | App. Date |
|-------|---------------|-----|-------|-----------|
| 33 | Lifestyles for Fitness | My Ad Bonus | M.H. | 07/10/2009 |
| 34 | Lifestyles for Fitness | Advertising Perks | M.H. | 07/10/2009 |
| 35 | Lifestyles for Fitness | Big Money Search | M.H. | 07/10/2009 |
| 36 | Lifestyles for Fitness | Place Your Ad Now | M.H. | 07/10/2009 |
| 37 | Funding Success | Fast Government Grants | A.J. | 07/15/2009 |
| 38 | Funding Success | Pad My Wallet | A.J. | 07/20/2009 |
| 39 | Funding Success | Capital Cushion Pro | A.J. | 07/20/2009 |
| 40 | Funding Success | Money Finder 4 You | A.J. | 07/20/2009 |
| 41 | Razor Processing | Click 4 Money Your Way | S.M. | 10/29/2009 |
| 42 | Razor Processing | Try Clicking for Money | S.M. | 10/29/2009 |
| 43 | Razor Processing | Click Money 4 Profit | S.M. | 10/29/2009 |
| 44 | Razor Processing | Click 4 Money My Way | S.M. | 10/29/2009 |
| 45 | Razor Processing | Click Money for You | S.M. | 10/29/2009 |

all in violation of Title 18, United States Code, Sections 1344(2) and 2.

## COUNTS 46-54
### 18 U.S.C. § 1005
### (Participation in Fraudulent Banking Activities)

53.     The Grand Jury incorporates by reference paragraphs 1 through 52 as if fully stated herein.

54.     On or about the dates specifically listed in the chart below, in the Central Division of the District of Utah, and elsewhere,

**JEREMY JOHNSON,**
**RYAN RIDDLE,**
**BRYCE PAYNE,**
**SCOTT LEAVITT,**
**LOYD JOHNSTON, and**
**IWORKS, INC.,**

defendants herein, aided and abetted by each other, knowingly and with the intent to defraud Wells Fargo Bank, a bank the deposits of which are insured by the Federal Deposit Insurance Corporation, participated and shared in and received (directly and indirectly) money, profit, property, and benefits through an act, transaction, and contract of Wells Fargo Bank, in that the defendants, by fraudulent means, secured merchant accounts at Wells Fargo Bank and benefitted from the processing of payments for online credit card sales using the merchant accounts:

| Count | Shell Company Recipient | DBA | Bank | Date | Amount |
|-------|------------------------|-----|------|------|--------|
| 46 | eCom Success | Grant Cash Quick | Town & Country Acct # 3123 | 03/03/2010 | $9,277.30 |
| 47 | eCom Success | My Fast Grant Help | Town & Country Acct # 3123 | 02/10/2010 | $12,754.81 |
| 48 | eCom Success | Your Grant Funds | Town & Country Acct # 3123 | 12/04/2009 | $11,771.83 |
| 49 | eCom Success | Quick Grants Now | Town & Country Acct # 3123 | 03/03/2010 | $8,912.75 |

21

| 50 | eCom Success | Grant Success Fast | Town & Country Acct # 3123 | 02/22/2010 | $14,385.54 |
| 51 | eBusiness First | Grant Query | Zions Acct # 6751 | 11/23/2009 | $35,722.50 |
| 52 | eBusiness First | Ask 4 Grants | Zions Acct # 6751 | 10/05/2009 | $6,530.64 |
| 53 | eBusiness First | Grant Endeavor | Zions Acct # 6751 | 09/08/2009 | $5,746.79 |
| 54 | eBusiness First | Hunt 4 Grants | Zions Acct # 6751 | 10/02/2009 | $30,282.53 |

all in violation of Title 18, United States Code, Sections 1005 and 2.

## COUNT 55
### 18 U.S.C. § 1956(h)
### (Conspiracy to Commit Money Laundering)

55.    The Grand Jury incorporates by reference paragraphs 1 through 54 as if fully stated

herein.

## THE CONSPIRACY

56.    Beginning in or about April 2009 through in or about January 2011, within the Central

Division of the District of Utah and elsewhere,

**JEREMY JOHNSON,**
**SCOTT LEAVITT,**
**BRYCE PAYNE,**
**RYAN RIDDLE, and**
**LOYD JOHNSTON,**

defendants herein, did knowingly combine, conspire, and agree with each other, and with other

persons known and unknown to the Grand Jury, to commit offenses against the United States,

to wit:

22

(a) to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, participation in fraudulent banking activities in violation of 18 U.S.C. § 1005, and bank fraud in violation of 18 U.S.C. § 1344, while knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b) to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is the transfer, transportation, and delivery of money, as well as additional financial transactions in the form of the deposit and subsequent withdrawal of money into and from accounts at financial institutions, electronic transfers between bank accounts, and domestic wire transfers initiated from bank accounts, such property having been derived from a specified unlawful activity, that is, participation in fraudulent banking activities in violation of 18 U.S.C. § 1005 and bank fraud in violation of 18 U.S.C. § 1344, all in violation of Title 18, United States Code, Section 1957.

## OBJECT OF THE CONSPIRACY

57.     The object of the conspiracy was to conceal and disguise the location, source, ownership, and control of the proceeds derived from credit card sales that were processed through fraudulently obtained merchant bank accounts and to transfer, distribute, and spend the proceeds

23

of those credit card sales for the benefit of the defendants through the following manner and means.

## MANNER AND MEANS OF THE CONSPIRACY

58.     The Grand Jury incorporates by reference paragraphs 1 through 57 as if fully stated here.

59.     It was a part of the conspiracy that the defendants caused credit card sales revenue generated in the fraudulent shell company merchant accounts to be deposited into shell company depository accounts owned and controlled by IWORKS and defendant JEREMY JOHNSON at various banks, including Far West Bank, Zions Bank, and Town & Country Bank.

60.     It was a part of the conspiracy that the defendants caused funds in the shell company depository accounts at the above banks to be transferred, diverted and redistributed to other bank accounts owned or controlled by IWORKS and JOHNSON, or to other parties for the benefit of the defendants, for the purpose of concealing and disguising the nature, location, source, ownership, and control of such funds, and for distributing the funds for the defendants' financial benefit,

all in violation of 18 U.S.C. § 1956(h).

### COUNTS 56-86
### 18 U.S.C. § 1957
### (Money Laundering)

61.     The Grand Jury incorporates by reference paragraphs 1 through 60 as if fully stated herein.

62.     On or about the dates listed in each count below, within the Central Division of the District of Utah and elsewhere,

24

**JEREMY JOHNSON,**
**SCOTT LEAVITT,**
**BRYCE PAYNE,**
**RYAN RIDDLE,**
**LOYD JOHNSTON,**
**and IWORKS, INC.,**

defendants herein, did knowingly engage in, and aided and abetted, counseled, commanded, induced, and

procured, the following monetary transactions involving funds that were proceeds of criminally derived

property and had a value in excess of $10,000, and was derived from a specified unlawful activity, with each

such transaction constituting a separate count in this Indictment, as set forth in the chart below:

| Count | Transfer Date | Transferred From | Amount | Transferred To |
|---|---|---|---|---|
| 56 | 10/2/2009 | Lifestyles For Fitness Far West Bank # 0126 | $100,000 | IWorks, Inc. DBA Blue Sky Marketing Far West Bank # 3943 |
| 57 | 10/9/2009 | Lifestyles For Fitness Far West Bank # 0126 | $70,000 | IWorks, Inc. DBA Blue Sky Marketing Far West Bank # 3943 |
| 58 | 10/2/2009 | GGL Rewards Far West Bank # 0135 | $100,000 | IWorks, Inc. DBA Blue Sky Marketing Far West Bank # 3943 |
| 59 | 10/9/2009 | GGL Rewards Far West Bank # 0135 | $70,000 | IWorks, Inc. DBA Blue Sky Marketing Far West Bank # 3943 |
| 60 | 11/20/2009 | GGL Rewards Far West Bank # 0135 | $40,000 | IWorks, Inc. DBA Blue Sky Marketing Far West Bank # 3943 |
| 61 | 8/3/2009 | Funding Success Far West Bank # 0125 | $250,000 | IWorks, Inc. DBA Blue Sky Marketing Far West Bank # 3943 |
| 62 | 8/17/2009 | Funding Success Far West Bank # 0125 | $50,000 | IWorks, Inc. DBA Blue Sky Marketing Far West Bank # 3943 |
| 63 | 8/19/2009 | Funding Success Far West Bank # 0125 | $50,000 | IWorks, Inc. DBA Blue Sky Marketing Far West Bank # 3943 |

| 64 | 9/30/2009 | Funding Success<br>Far West Bank # 0125 | $60,000 | IWorks, Inc. DBA<br>Blue Sky Marketing<br>Far West Bank # 3943 |
|---|---|---|---|---|
| 65 | 9/28/2009 | Funding Success<br>Far West Bank # 0125 | $150,000 | IWorks, Inc. DBA<br>Blue Sky Marketing<br>Far West Bank # 3943 |
| 66 | 3/26/2010 | Net Business Success<br>Zions Bank # 7320 | $200,000 | Check to IWorks, Inc.<br>Far West Bank # 3943 |
| 67 | 4/6/2010 | Net Business Success<br>Zions Bank # 7320 | $100,000 | Check to IWorks, Inc.<br>Far West Bank # 3943 |
| 68 | 4/8/2010 | Net Business Success<br>Zions Bank # 7320 | $200,000 | Check to IWorks, Inc.<br>SunFirst Bank # 3347 |
| 69 | 4/18/2010 | Net Business Success<br>Zions Bank # 7320 | $150,000 | Check to IWorks, Inc.<br>Far West Bank # 3943 |
| 70 | 4/22/2010 | Net Business Success<br>Zions Bank # 7320 | $550,000 | Check to U.S. Treasury |
| 71 | 10/2/2009 | eBusiness First<br>Zions Bank # 6751 | $50,000 | Check to IWorks, Inc.<br>Far West Bank # 3943 |
| 72 | 10/6/2009 | eBusiness First<br>Zions Bank # 6751 | $60,000 | Check to IWorks, Inc.<br>Far West Bank # 3943 |
| 73 | 10/8/2009 | eBusiness First<br>Zions Bank # 6751 | $100,000 | Check to IWorks, Inc.<br>Far West Bank # 3943 |
| 74 | 11/18/2009 | eBusiness First<br>Zions Bank # 6751 | $100,000 | Check to IWorks, Inc.<br>Far West Bank # 3943 |
| 75 | 12/31/2009 | eBusiness First<br>Zions Bank # 6751 | $80,000 | Check to IWorks, Inc.<br>Far West Bank # 3943 |
| 76 | 12/10/2009 | Razor Processing<br>Town & Country # 2620 | $200,000 | IWorks, Inc.<br>Town & Country # 0301 |
| 77 | 12/17/2009 | Razor Processing<br>Town & Country # 2620 | $175,000 | IWorks, Inc.<br>Town & Country # 0301 |
| 78 | 12/31/2009 | Razor Processing<br>Town & Country # 2620 | $175,000 | IWorks, Inc.<br>Town & Country # 0301 |
| 79 | 12/31/2009 | Razor Processing<br>Town & Country # 2620 | $65,000 | Check to IWorks, Inc.<br>Far West Bank # 3943 |
| 80 | 4/22/2010 | Razor Processing<br>Town & Country # 2620 | $75,000 | Check to U.S. Treasury |
| 81 | 12/10/2009 | eCom Success<br>Town & Country # 3123 | $100,000 | IWorks, Inc.<br>Town & Country # 0301 |
| 82 | 12/17/2009 | eCom Success<br>Town & Country # 3123 | $70,000 | IWorks, Inc.<br>Town & Country # 0301 |

| 83 | 1/25/2010 | eCom Success Town & Country # 3123 | $125,000 | Wire to IWorks, Inc. Far West Bank # 3943 |
|----|-----------|-------------------------------------|----------|-------------------------------------------|
| 84 | 12/31/2009 | eCom Success Town & Country # 3123 | $50,000 | Check to IWorks, Inc. Far West Bank # 3943 |
| 85 | 3/15/2010 | eCom Success Town & Country # 3123 | $250,000 | IWorks, Inc. Town & Country # 0301 |
| 86 | 4/22/2010 | eCom Success Town & Country # 3123 | $200,000 | Check to U.S. Treasury |

all in violation of Title 18 United States Code, Section 1957 (a)(1) and 2.

## FORFEITURE

The United States re-alleges the above allegations.

Upon conviction of the felony offenses alleged in Counts 1 through 54 of this indictment, the defendants shall forfeit to the United States of America pursuant to 18 U.S.C. 982(a)(2)(A) any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of violations of 18 U.S.C. §§ 371, 1005, 1014, 1343, and 1344.  Such property includes but is not limited to the following:

- MONEY JUDGMENT.  United States currency representing the amount of proceeds obtained directly or indirectly as a result of the above charges.

Upon conviction of the felony offenses alleged in Counts 55 through 86 of this indictment, the defendants shall forfeit to the United States of America pursuant to 18 U.S.C. § 982(a)(1) any property, real or personal, involved in violations of 18 U.S.C. §§ 1956(h) and 1957, and any property traceable to such property. Such property includes but is not limited to the following:

- MONEY JUDGMENT.  The value in United States currency of all property involved in the money laundering charges.

27

A TRUE BILL:

/S/

FOREPERSON

DAVID B. BARLOW
United States Attorney

ROBERT C. LUNNEN
Assistant United States Attorney
JASON R. BURT
Assistant United States Attorney