IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JEREMY JOHNSON, et al., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER <br><br> 2:11-CR-501 DN <br><br> Chief District Judge David Nuffer <br><br> Magistrate Judge Paul M. Warner |

Chief District Judge David Nuffer referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court is a motion for a bill of particulars filed by Scott Leavitt[2] and joined by Loyd Johnston,[3] Jeremy Johnson, Ryan Riddle, and Bryce Payne[4] (collectively, "Defendants").

## BACKGROUND

On March 6, 2013, the United States of America ("Government") filed a First Superseding Indictment against Defendants and iWorks setting forth 86 various counts, including: Conspiracy, False Statement to Bank, Wire Fraud, Bank Fraud, Participating in Fraudulent Banking Activities, Conspiracy to Commit Money Laundering, Money Laundering,

---

[1] *See* docket no. 136.

[2] *See* docket no. 600.

[3] The court recognizes that the indictment has been dismissed as to Loyd Johnston per docket nos. 695 and 696. Thus, the motion for a bill of particulars is moot with respect to that defendant only.

[4] *See* docket nos. 602, 607, 608, 609, respectively.

1

and Aiding and Abetting. The First Superseding Indictment set forth the factual context in which the criminal charges arose. Specifically, First Superseding Indictment described the online sales business in which iWorks and Defendants were engaged. It explained the banking business system behind online credit card transactions, including the process that iWorks followed for obtaining merchant accounts with sponsoring banks in order to process its credit card sales. It described iWorks' internet marketing program and the types of products iWorks was touting. It explained what credit card chargebacks are and how credit card companies such as Visa and MasterCard began placing iWorks in "monitoring programs" for merchants with high chargeback rates. It stated that iWorks failed to bring its chargeback problem under control, despite incurring huge fines and fees for the high number of chargebacks. And, it explained that the sponsoring banks at which iWorks had merchant accounts began placing iWorks and Jeremy Johnson on the M.A.T.C.H. list (Member Alert to Control High-risk Merchants) and/or closing the merchant accounts associated with them. It also stated that without merchant accounts, iWorks could not process online credit card transactions, which could destroy iWorks' business.

Count 1 of the First Superseding Indictment set forth in detail Defendants' alleged conspiracy to violate four specific federal criminal statutes (18 U.S.C. § 1005 (Participation in Fraudulent Banking Activities); 18 U.S.C. § 1014 (False Statements to a Bank); 18 U.S.C. § 1343 (Wire Fraud); and 18 U.S.C. § 1344 (Bank Fraud)). It explained that Defendants conspired to obtain fraudulent merchant accounts from Wells Fargo so that iWorks could continue online credit card sales. It alleged that Defendants formulated and executed a scheme to circumvent the M.A.T.C.H. list by applying for merchant accounts using shell companies with nominee owners other than Jeremy Johnson and iWorks. It asserted that Defendants recruited people to act as

straw owners of the shell companies and that the companies had no legitimate business operations. In total, the First Superseding Indictment alleged that Defendants caused the formation of around 300 shell companies that were doing business under fictitious business names ("DBA"). It explained how the shell companies were created, how merchant account applications for these shell companies were prepared with false and fraudulent statements, and that Defendants caused the applications to be submitted for the purpose of establishing merchant accounts at Wells Fargo. It alleged that, unbeknownst to Wells Fargo, all of these companies were in reality owned and controlled by Jeremy Johnson, and it described numerous overt acts which each Defendant engaged in to further the conspiracy. It detailed correspondence among Defendants outlining their precise plan for setting up the shell corporations and applying for merchant accounts for these corporations to process credit card transactions. It also provided examples of Defendants setting up these shell corporations and applying for associated merchant accounts.

Counts 2-11 of the First Superseding Indictment charged Defendants with ten counts of making false statements to a bank in violation of 18 U.S.C. § 1014, one of the four predicate violations in Count 1. Specifically, the First Superseding Indictment alleged that Defendants "did knowingly make false statements on merchant account applications, for the purpose of influencing the actions of Wells Fargo Bank," and identified in each count the exact applications that contained false and fraudulent information, providing a bullet-point list of the false statements included in the applications.

Counts 12-32 of the First Superseding Indictment charged Defendants with wire fraud in violation of 18 U.S.C. § 1343, another one of the four predicate violations in Count 1. Each

3

count of wire fraud involved the wire transmission of a fraudulent merchant account application. The wire fraud counts additionally set forth the date of the transmission and the details of the exact merchant account application charged.

Counts 33-45 of the First Superseding Indictment charged each Defendant with bank fraud in violation of 18 U.S.C. § 1344(2), another of the predicate violations in Count 1. It alleged that Defendants submitted the fraudulent merchant account applications to Wells Fargo for the purpose of establishing merchant accounts to process online credit card sales and caused online credit card sales to be processed through those fraudulent accounts. It set forth the separate merchant account applications (and associated shell company, DBA, straw owner, and application date) for each count.

Counts 46-54 of the First Superseding Indictment charged Defendants with participation in fraudulent banking activities in violation of 18 U.S.C. § 1005, the last of the four predicate violations in Count 1. It alleged that Defendants "participated and shared in and received (directly and indirectly) money, profit, property, and benefits through an act, transaction, and contract of Wells Fargo Bank" by fraudulent means, and then listed the specific shell company, associated DBA, bank, and amount of money that each shell company received through the processing of online credit card sales at Wells Fargo.

Count 55 of the First Superseding Indictment charged Defendants with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). It described the conspiracy in detail, setting forth how Defendants conspired to conceal and disguise the proceeds of the specified unlawful activity charged in counts of 18 U.S.C. §§ 1005 and 1344 by depositing the property from the shell companies' bank accounts to iWorks' accounts. And, finally, counts 56-

4

86 charged Defendants with counts of money laundering in violation of 18 U.S.C. § 1957, and it listed each specific transfer, including the transfer date, the transferor bank, the transferee bank, and the amount of the transfer.

On December 5, 2013, the Government filed a Second Superseding Indictment that made only minor and technical changes.[5] On August 5, 2015, the Government filed a Third Superseding Indictment.[6] The Third Superseding Indictment includes the exact same 86 counts as the First Superseding Indictment. The substantive changes from the First and Second Superseding Indictments to the Third Superseding Indictment are minimal. In particular, iWorks was removed as a defendant, Riddle was removed from counts that are alleged to have occurred after he retired from iWorks, and an allegation that the offenses affected a financial institution was added to the wire fraud counts. The Government also removed background information relating to iWorks' internet marketing practices. Defendants filed the instant motion asserting that the Third Superseding Indictment "is missing sufficient information to allow Defendant[s] to adequately prepare [their] defense at trial, to avoid prejudicial surprise, and to ensure [their] double jeopardy rights as set forth in the Fifth Amendment."[7]

## DISCUSSION

Rule 7(c) of the Federal Rules of Criminal Procedure requires an indictment to "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). Rule 7(f) allows the court to "direct the government to file a

---

[5] *See* docket no. 341.

[6] *See* docket no. 584.

[7] Docket no. 600 at 1.

bill of particulars." Fed. R. Crim P. 7(f). "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988) (quotations and citation omitted). While a bill of particulars is not a discovery device, it may "amplify the indictment by providing additional information." *Id.* "[T]he defendant is not entitled to notice of all of the evidence the government intends to produce, but only the theory of the government's case." *United States v. Levine*, 983 F.2d 165, 167 (10th Cir. 1992) (quotations and citation omitted). The denial of a motion for a bill of particulars is reviewed "for an abuse of discretion," and will not be reversed "unless defendant shows that he was actually surprised at trial and thereby incurred prejudice to his substantial rights." *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996) (quotations and citations omitted).

An indictment is "'generally sufficient if it sets forth the offense in the words of the statute so long as the statute adequately states the elements of the offense.'" *Dunn*, 841 F.2d at 1029 (quoting *United States v. Salazar*, 720 F.2d 1482, 1486 (10th Cir. 1983), *cert. denied*, 469 U.S. 1110 (1985)). "An indictment need not go further and allege 'in detail the factual proof that will be relied upon to support the charges.'" *Id.* (quoting *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir.1978), *cert. denied*, 439 U.S. 1069 (1979) (citations omitted)).

Defendants seek a bill of particulars on the grounds that (1) the Government has revised its theory of its case in the Third Superseding Indictment; (2) the discovery in this case is voluminous thereby necessitating a bill of particulars; and (3) counsel have been admonished by this court to work within their budgets. Defendants attempt to set forth "issues" with the Third

6

Superseding Indictment and complain that it "lacks specificity in certain key areas."[8] The court will address each argument in turn.

First, the court is not persuaded by Defendants' contention that the Government has revised its theory of the case. The Third Superseding Indictment advances the same theory of prosecution as the First and Second Superseding Indictments; there is no apparent change in theory. Each alleges that Defendants, individually and in combination, violated various federal laws by engaging in fraudulent and deceptive conduct in opening and utilizing merchant accounts to accept and process credit card payments from the public, and additionally engaged in unlawful monetary transactions to hide the unlawful source of those proceeds. The Third Superseding Indictment is sufficiently detailed to put Defendants on notice of the charges against them so that they may prepare a defense. As noted above, it recites the charges against Defendants, tracking the text of the statutes they have allegedly violated. It provides the specific date and the documents or wire transfers comprising the offense alleged in each substantive count. Thus, the Third Superseding Indictment provides ample notice of the criminal conduct with which Defendants are charged. It is sufficiently detailed to allow Defendants to prepare their defense, to minimize any surprise at trial, and to enable them "to plead double jeopardy in the event of a later prosecution for the same offense." *Dunn*, 841 F.2d at 1029 (quotations and citation omitted).

Second, the court is not persuaded by Defendants' argument that the voluminous discovery in this matter justifies a bill of particulars. The Tenth Circuit rejected a similar argument in *United States v. Ivy*, 83 F.3d 1266 (10th Cir. 1996). Specifically, the court noted:

---

[8] *Id.* at 3, 7.

> By providing complete discovery containing sufficient information to allow them to prepare their defense, the government gave [defendants] the tools necessary to anticipate and forestall any surprise that might have resulted from the indictment. Once the government provided these tools, it was [defendants'] responsibility to use them in preparing their defense, regardless of whether the discovery was copious and the preparation of the defense was difficult.

*Id.* at 1282. Furthermore, the court notes that while there is a large volume of discovery in this case, Defendants have had a considerable amount of time to review it considering the number of delays and inevitable continuances in this case. In addition, the Government has been attempting to narrow the discovery it intends to rely up in this case by identifying and producing what is known as "hot docs." The Government has also provided "road maps" to counsel outlining the prosecution's theory of the case. Thus, it appears that Defendants are improperly seeking to compel the Government "to disclose evidentiary details or explain the legal theories upon which it intends to rely at trial." *United States v. Gabriel*, 715 F.2d 1447, 1449 (10th Cir. 1983) (quotations and citation omitted).

And, finally, this court is not persuaded by Defendants' argument that requiring counsel to stay within their budgets necessitates a bill of particulars. As counsel is well-aware, this court has repeatedly approved budgets and requests for additional funding. The most recent budget orders were carefully drafted in conjunction with the Tenth Circuit's Case Budgeting Attorney. They have been reviewed and approved by this court, as well as by the Tenth Circuit. They are fair and adequate budgets, and they provide ample resources for counsel to zealously represent their clients. That said, if counsel for Defendants are not capable of doing the job within these budgets, the court will find counsel who can.

## CONCLUSION

The court finds that the Third Superseding Indictment, along with the discovery produced by the United States, provides Defendants with the adequate notice and detail necessary to prepare their defense for trial. Based on the foregoing, Defendants' motion for a bill of particulars is **DENIED**.

Dated this 26th day of October, 2015.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge