IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br>v.<br><br>JEREMY DAVID JOHNSON, et al.,<br><br>                Defendant. | **MEMORANDUM DECISION AND ORDER DENYING CONSOLIDATED MOTION**<br><br>Case No. 2:11-cr-00501-DN-PMW<br><br>District Judge David Nuffer<br>Magistrate Judge Paul M. Warner |

On October 30, 2015, counsel for Mr. Johnson filed a consolidated motion seeking a hearing and seeking dismissal of the Indictment ("Motion").[1] On November 13, 2015, the prosecution filed its response to the Motion ("Response"),[2] opposing the relief requested in the Motion. On November 20, 2015, counsel for Mr. Johnson filed a reply ("Reply").[3] For the reasons set forth below, the Motion is DENIED.

## REQUESTED RELIEF

The Motion seeks: (1) a *Kastigar* hearing;[4] (2) an evidentiary hearing;[5] (3) dismissal of the Indictment based on violation of the Sixth Amendment;[6] and (4) dismissal of the Indictment based on violation of the Fifth Amendment.[7]

---

[1] Consolidated Motion to Dismiss and for Evidentiary Hearing(s) ("Motion"), docket no. 716, filed October 30, 2015.

[2] United States' Response to Defendant Johnson's Considated [sic] Motion to Dismiss and for Evidentiary Hearings ("Response"), docket no. 748, filed November 13, 2015.

[3] Reply to Government's Response Opposing Motion to Dismiss and for Evidentiary Hearing(s) ("Reply"), docket no. 766, filed November 20, 2015.

[4] Motion at 2 (citing *Kastigar v. United States*, 406 U.S. 441 (1972)).

[5] *Id.* at 3.

[6] *Id.*

[7] *Id.*

**SUMMARY OF ARGUMENTS**

Counsel for Mr. Johnson argues that the Motion should be granted because Mr. Johnson "is a key witness in the prosecution of Mark Shurtleff and John Swallow"[8] and, during investigation of Shurtleff and Swallow, Mr. Johnson was granted statutory use immunity by Utah authorities "pursuant to Utah Code § 77-22b-1"[9] in exchange for divulging certain information. Mr. Johnson's counsel argues that "Mr. Johnson and Mr. Yengich [Mr. Johnson's former attorney] provided information and evidence to the [Utah State] Shurtleff/Swallow [prosecution] team with the express understanding that the . . .USAO [United States Attorney's Office for the District of Utah] would not have access to that material."[10] Now, however, Mr. Johnson's attorney argues, the USAO has obtained access to that material, which means that either a hearing should be held and the improperly-obtained evidence should be suppressed, or the Indictment should be dismissed.[11]

The prosecution in this case disagrees. The prosecution argues that no hearing is needed and dismissal is not warranted because (1) Mr. Johnson was never compelled to provide any information for the State of Utah's investigation into Mr. Shurtleff and Mr. Swallow; (2) the prosecution in this case obtained the relevant materials "solely to satisfy its discovery obligations to Mr. Johnson and his co-defendants;" (3) Mr. Johnson did not have an immunity agreement with state prosecutors until *after* the prosecution in this case obtained the relevant materials; (4) the attorney-client privilege was waived entirely when Mr. Johnson turned over the relevant

---

[8] *Id.* at 4.

[9] *Id.*

[10] *Id.* at 5 (emphasis in original).

[11] *Id.* at 10, 11-19.

materials; and (5) there is no Sixth Amendment violation because the prosecution in this case has not seen any privileged communications.[12]

## DISCUSSION

None of the relief requested by Mr. Johnson is warranted. Each of his requests will be considered below.

### A *Kastigar* Hearing is Not Necessary

Mr. Johnson argues that a *Kastigar* hearing is necessary. When presented with a *Kastigar* challenge, the "task is to determine whether any of the evidence used against the defendant was in any way derived from his compelled immunized testimony."[13] "Once a defendant demonstrates that he has testified under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence."[14] There are several reasons a *Kastigar* hearing is not necessary in this case.

First, Mr. Johnson cannot show that he obtained immunity *before* the materials were disclosed. The only evidence of an immunity agreement is an email from Mr. Rawlings to Mr. Yengich on March 23, 2015.[15] The Prudential Search Request ("PSR") materials were obtained *prior* to that date.[16] Thus, any immunity agreement Mr. Johnson reached with state investigators came *after* the prosecution had already obtained the PSR materials. Therefore, Mr. Johnson has failed to carry his initial burden to show that he has "testified under a state grant of immunity,"

---

[12] Response at 1.

[13] *United States v. Schmigdall*, 25 F.3d 1523, 1528 (11th Cir. 1994).

[14] *United States v. Serrano*, 870 F.2d 1, 14 (1st Cir. 1989) (quoting *Kastigar*, 406 U.S. at 460).

[15] Email from Troy Rawlings, Davis City. Attorney, to Ron Yengich (March 23, 2015), attached as Ex. H to Response, docket no. 748-8, filed November 13, 2015.

[16] Decl. of SA Henrikson ¶ 9, attached as Ex. C to Response, docket no. 748-3, filed November 13, 2015 (stating that PSR materials were delivered to the USAO on March 11, 2015).

and therefore, the PSR materials are not considered to be provided pursuant to an immunity agreement.[17]

Second, even if the state investigators' grant of immunity could be considered to be in effect when the PSR materials were disclosed—which is not supported by the evidence—Mr. Johnson has failed to show that his testimony was "compelled," as defined by *Kastigar* and related cases.[18] Instead, the evidence shows that Mr. Johnson voluntarily provided the PSR material to state investigators under a "*cooperation* agreement."[19] State investigators did not act pursuant to a subpoena or other compulsory process issued after Mr. Johnson refused to cooperate. Rather, Mr. Johnson provided information willingly. Therefore, any testimony Mr. Johnson gave state investigators was not "compelled testimony" as treated in *Kastigar* and related cases. Johnson's Reply does not address the cases cited by the prosecution in its Response, instead relying on two affidavits stating that Mr. Johnson was granted "statutory use immunity" under Utah Code § 77-22b-1(1)(a). But the affidavits do not purport to state *when* immunity was granted or became applicable. The only information relative to the *timing* of the grant of immunity is the email from Mr. Rawlings dated March 23, 2015.[20] Therefore, Mr. Johnson fails to show that the information he provided was "compelled" while the grant of immunity was in effect.

---

[17] *See United States v. Anderson*, No. 98-20030-01/07-JWL, 1999 WL 84290, at *3 (D. Kan. Jan. 8, 1999) (unpublished) ("Any information . . . provided . . . prior to the grant of immunity simply was not 'information compelled under' the immunity order, nor was it 'information directly or indirectly derived from' such a compulsion.").

[18] *See* Response at 16-32 (explaining *Kastigar* and related cases, *Murphy v. Waterfront Commission*, 378 U.S. 52 (1963); *United States v. Camp*, 72 F.3d 759 (9th Cir. 1995), *cert. denied*, 517 U.S. 1162 (1996); *United States v. Eliason*, 3 F.3d 1149 (7th Cir. 1993); *United States v. Roberson*, 872 F.2d 597 (5th Cir. 1989), *cert. denied*, 493 U.S. 861 (1989), require "compelled" testimony to be the result of a subpoena or other compulsory process).

[19] Email from Troy Rawlings, Davis City. Attorney, to Ron Yengich (March 23, 2015), attached as Ex. H to Response, docket no. 748-8, filed November 13, 2015 (stating Mr. Johnson would be granted immunity due to his "voluntary cooperation . . . .").

[20] Utah Code § 77-22b-1(1)(b) requires the immunity agreement to be put in writing unless immunity is offered on the record during a court proceeding. The earliest evidence of that written agreement is March 23, 2015.

Third, even if the PSR materials were obtained pursuant to a "compelled immunized testimony," which they were not, the prosecution has represented that it has not used, will not use, and cannot use the PSR materials against Mr. Johnson at trial, during grand jury proceedings, or at any other point during the federal criminal prosecution.[21] The prosecution obtained the PSR materials solely to satisfy its discovery obligations to Johnson, and has turned them over to Johnson to assure that the defense has all information that might be relevant to its case. Even though the prosecution obtained the materials, the prosecution's attorneys have not seen the PSR materials,[22] and the prosecution has testified that it has not used, and committed not to use any of the PSR materials against Mr. Johnson at any point during the federal criminal prosecution.[23]

To be clear, the prosecution is barred from using PSR materials for anything other than to satisfy the prosecution's discovery obligations under *Brady*, *Giglio*, and *Jenks*. Obtaining the information without viewing it or using it for prosecution purposes is permissible, and does not necessitate dismissal of an indictment.[24]

Because Mr. Johnson has failed to demonstrate that he was compelled to testify pursuant to a grant of immunity, and because the prosecution has shown that it has not used and will not use any of the PSR materials against Mr. Johnson, a *Kastigar* hearing is not necessary.

---

[21] Response at 14-15.

[22] The only exception to this statement is that AUSA Fojtik reviewed some of the PSR materials to satisfy the prosecution's discovery obligations under *Brady*, *Giglio*, and *Jenks*, but immediately stopped her review once she viewed a document that she believed to be a timeline created by a previous attorney of Mr. Johnson. Decl. of AUSA Karin Fojtik, attached as Ex. 1 to Motion ¶C.3., docket no. 716-1, filed October 30, 2015.

[23] *See* Decl. of AUSA Lunnen, attached as Ex. A to Response, docket no. 748-1, filed November 13, 2015; Decl. of AUSA Kennedy, attached as Ex. B to Response, docket no. 748-2, filed November 13, 2015; Decl. of SA Henrikson, attached as Ex. C to Response, docket no. 748-3, filed November 13, 2015; Decl. of AUSA Fojtik, attached as Ex. E to Response, docket no. 748-5, filed November 13, 2015; Decl. of AUSA Burt, attached as Ex. F to Response, docket no. 748-6, filed November 13, 2015; Decl. of IRS-CI SA Hipwell, attached as Ex. G to Response, docket no. 748-7, filed November 13, 2015.

[24] *United States v. Singleton*, 52 Fed. Appx. 456, 458-59 (10th Cir. 2002) (unpublished); *United States v. Zajac*, No. 2:06-cr-00811-DAK, 2008 WL 1808701, *5 (D. Utah April 21, 2008) (unpublished).

## An Evidentiary Hearing is Not Necessary

Mr. Johnson argues an evidentiary hearing is necessary to determine the "nature and scope of the documents and communications contained within the [PSR] materials obtained and accessed by the prosecution."[25] The prosecution, on the other hand, argues that an evidentiary hearing is not needed because there is no indication that the prosecution used any of the PSR material in the grand jury proceedings, or that the prosecution will use any of the PSR material for any part of the prosecution.[26] The prosecution is correct.

As explained above, the prosecution has not used, and has committed not to use, any of the PSR materials against Mr. Johnson at any point during the federal criminal prosecution.[27] To the extent Mr. Johnson may be concerned that PSR materials could be used against him, this Order affirmatively bars the prosecution from using any PSR materials for anything other than to satisfy the prosecution's discovery obligations under *Brady*, *Giglio*, and *Jenks*.

Moreover, the evidence shows that only one AUSA (Karin Fojtik) reviewed PSR materials, and she testified that she immediately stopped reviewing PSR materials once she observed a document that may have been subject to attorney-client privilege.[28] She has "not reviewed the PSR materials since the observation of this document."[29] She further testified that she "saw no attorney-client emails, nor any other direct attorney-client communication other than

---

[25] Motion at 3.

[26] Response at 32.

[27] *See* Decl. of AUSA Lunnen, attached as Ex. A to Response, docket no. 748-1, filed November 13, 2015; Decl. of AUSA Kennedy, attached as Ex. B to Response, docket no. 748-2, filed November 13, 2015; Decl. of SA Henrikson, attached as Ex. C to Response, docket no. 748-3, filed November 13, 2015; Decl. of AUSA Fojtik, attached as Ex. E to Response, docket no. 748-5, filed November 13, 2015; Decl. of AUSA Burt, attached as Ex. F to Response, docket no. 748-6, filed November 13, 2015; and Decl. of IRS-CI SA Hipwell, attached as Ex. G to Response, docket no. 748-7, filed November 13, 2015.

[28] Decl. of AUSA Fojtik ¶ 3, attached as Ex. E to Response, docket no. 748-5, filed November 13, 2015.

[29] *Id.* ¶ 3.

this single document in my review of the PSR materials related to attorney-client communications."[30]

Therefore, because the submitted affidavits show that the prosecution is not aware of what is contained in the PSR materials, there is no need to hold an evidentiary hearing to determine the "nature and scope of the documents and communications contained within the [PSR] materials obtained and accessed by the prosecution." Again, it is clear the PSR materials will not be used against Mr. Johnson in this prosecution.

### Dismissal of the Indictment under the Sixth Amendment is Not Warranted

Next, Mr. Johnson argues that dismissal of the Indictment is warranted under the Sixth Amendment because there has been an "intentional intrusion into his attorney-client relationship in violation of the Sixth Amendment."[31] Mr. Johnson bases this argument on the USAO's obtaining of the PSR materials.[32]

The governing test regarding impermissible intrusion into a defendant's attorney-client privilege is set forth in *Shillinger v. Haworth*.[33] "[W]hen the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed."[34]

Dismissal of the Indictment under the Sixth Amendment is not warranted for at least two independent reasons: (1) Mr. Johnson has waived any claim to privilege in the PSR materials,

---

[30] *Id.* ¶ 4.

[31] Motion at 3.

[32] *Id.*

[33] *Shillinger v. Haworth*, 70 F.3d 1132 (10th Cir. 1995).

[34] *Id.* at 1142.

and (2) the *Shillinger* test is not met because there was no "purposeful intrusion" by the prosecution and the prosecution had a legitimate reason for seeking the PSR materials.

First, it is fundamental that "[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party."[35] Mr. Johnson voluntarily disclosed the substance of attorney-client communications to a third party when he cooperated with state investigators. Any information that Mr. Johnson voluntarily disclosed to state investigators is therefore not protected by the attorney-client privilege, and there can be no Sixth Amendment violation for the USAO's obtaining it through a PSR request. Even though Mr. Johnson attempts to argue that the information was not given voluntarily because he and his attorney sought assurances that the information would not be given to the USAO, there is no indication that Mr. Johnson or his attorney took any steps to specifically preserve the attorney-client privilege. There is no indication that Mr. Johnson or his attorney sought to specifically identify or mark documents as privileged. Instead, it appears Mr. Johnson simply turned over the information to state investigators. He thereby waived attorney-client privilege with respect to the communications that were disclosed.

Second, even if Mr. Johnson did not waive the attorney-client privilege by voluntarily disclosing confidential information, the *Shillinger* test is not met. Under *Shillinger*, the prosecution must obtain confidential information by "purposeful intrusion," and must lack any "legitimate justification for doing so . . . ."[36] Cases subsequent to *Shillinger* have shown that "purposeful intrusion" does not occur merely by the prosecution obtaining privileged materials;

---

[35] *United States v. Wade*, 203 Fed. Appx. 920, 924 (10th Cir. 2006) (unpublished); *see also United States v. Bump*, 605 F.2d 548, 551 (10th Cir. 1979) ("Even if the privilege exists it is waived when the client voluntarily reveals the information to another or his attorney does so with his consent."); *United States v. Ary*, 581 F.3d 775, 782 (10th Cir. 2008) ("Where disclosure to a third party is voluntary, the privilege is waived.").

[36] *Shillinger*, 70 F.3d at 1142.

8

rather, it is what the prosecution does with the materials *after obtaining them* that determines whether there has been a Sixth Amendment violation.[37] Here, the prosecution evidently obtained attorney-client material through the PSR disclosures from the FBI. However, the prosecution implemented a "taint team," and the only AUSA to see any privileged communication was AUSA Fojtik. None of the other prosecutors viewed any privileged communications. Moreover, the PSR materials were obtained for the sole purpose of turning them over as part of the prosecution's discovery obligations. This is "legitimate justification" for obtaining the privileged materials. But even more importantly, the substance of the materials was *never disclosed to the prosecutors*, outside of a single document viewed by AUSA Fojtik who ceased review once she was aware it might be attorney-client privileged communication and she did not review any further documents.

Therefore, because Mr. Johnson has waived any claim to privilege in the PSR materials, and because the *Shillinger* test is not met, the Indictment will not be dismissed due to alleged Sixth Amendment violations.

**Dismissal of the Indictment under the Fifth Amendment is Not Warranted**

Finally, Mr. Johnson argues that dismissal of the Indictment is warranted because "his Fifth Amendment Right to Due Process has been violated as a result of federal agents' misuse of evidence obtained under an apparently-false promise that it would be protected from disclosure" to the USAO.[38] The prosecution disagrees, noting that the information obtained from Mr. Johnson by federal agents during the state investigation of Mr. Shurtleff and Mr. Swallow was

---

[37] *See Singleton*, 52 Fed. Appx. at 458-59 (rejecting *Shillinger* claim even though prosecution had obtained attorney-client privileged communication because the prosecutors had not seen the privileged communications and had implemented a "taint team"); *Zajac*, 2008 WL 1808701 at *5 (rejecting *Shillinger* claim even though prosecution had obtained attorney-client privileged communication because the prosecutors had taken care to separate privileged communication from other communication, and had not listened to privileged communication).

[38] Motion at 3.

9

obtained *before* any grant of immunity was provided by state investigators.[39] Therefore, according to the prosecution, because the information was obtained before any immunity was offered, it could not be misused and was not given under false pretenses.[40]

The material was volunteered by Mr. Johnson under a cooperation agreement—as opposed to a subpoena or other compulsory process— and the information was provided *before* the cooperation agreement was in place. Further, Mr. Johnson's complaint that the information was not protected from the prosecution team members at the USAO is inaccurate. As shown through affidavits submitted by the prosecution, only one of the members of the prosecution team saw any of the PSR materials—the rest of the prosecution was "walled off." And the member of the prosecution team who reviewed the PSR materials only saw one potentially-privileged document and then ceased her review. This is not a violation of Mr. Johnson's due process, and therefore dismissal of the Indictment under the Fifth Amendment is not warranted.

---

[39] Response at 41.

[40] *Id.*

**ORDER**

IT IS HEREBY ORDERED that Mr. Johnson's Motion[41] is DENIED. To the extent Mr. Johnson may be concerned that PSR materials could be used against him, this Order affirmatively bars the prosecution from using any PSR materials for anything other than what they have already been used for, which is to satisfy the prosecution's discovery obligations under *Brady*, *Giglio*, and *Jenks*.

Dated January 22, 2016.

BY THE COURT:

David Nuffer
United States District Judge

---

[41] Consolidated Motion to Dismiss and for Evidentiary Hearing(s) ("Motion"), docket no. 716, filed October 30, 2015.