IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>JEREMY JOHNSON AND RYAN RIDDLE,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PRO SE MOTION TO DISMISS**<br><br>Case No. 2:11-cr-501-DN<br><br>District Judge David Nuffer |

While the jury was still deliberating, Defendant Jeremy Johnson filed a pro se motion to dismiss claiming prosecutorial misconduct for statements made during closing argument.[1] The prosecution responded to the motion,[2] and shortly thereafter, Defendant Ryan Riddle, then acting pro se, filed a motion for joinder,[3] which was granted.[4] After a complete review of the memoranda submitted, the motion is DENIED for the reasons stated below.

## DISCUSSION

### Reference to Domain Names

Johnson's first claim of misconduct is that the prosecution referenced "domain names" in closing argument.[5] The parties had agreed that "domain names" would not be argued as false statements for the charges under 18 U.S.C. § 1014. The prosecutor's only used the term "domain names" during closing argument to describe that iWorks' merchant account department had to

---

[1] Motion to Dismiss (or for Mistrial) for Prosecutorial Misconduct During Closing Argument (Motion to Dismiss), docket no. 1376, filed March 21, 2016.

[2] United States' Response to Motion to Dismiss (or for Mistrial) for Prosecutorial Misconduct During Closing Argument (Response), docket no. 1383, filed March 23, 2016.

[3] Motion for Joinder in Doc. No. 1376 Motion for Mistrial, docket no. 1385, filed March 23, 2016.

[4] Docket Text Order, docket no. 1386, filed March 23, 2016.

[5] Motion to Dismiss at 1-2.

obtain domain names as one step in the process to apply for and set up merchant accounts for the shell companies. The prosecution did not argue "domain names" were a false statement under 18 U.S.C. § 1014.

Johnson also refers to some jury instructions he claims relate to domain names, but these references do not relate to allegations of prosecutorial misconduct. Further, after Johnson raised concerns *in camera*,[6] the terms "web page, web site URLs, passwords, and domain names" were removed from the jury instructions relating to the charges under 18 U.S.C. § 1014.[7]

**References to CardFlex Witnesses' Testimony**

Johnson asserts that prosecutorial misconduct occurred during closing argument when CardFlex witnesses' testimony was referenced.[8] Johnson states that the prosecution "called as government witnesses Cardflex employees that they knew would lie under oath, testifying that they were 'conned' by Jeremy Johnson and the defendants."[9] Johnson further complains that the prosecutor said "'Cardflex had no motivation to do this (I Works processing structure)'" and "'It was not Andy Phillips' idea.'"[10]

Mr. Swaim was the CardFlex witness that testified he and CardFlex were "conned" and "lied to" by the defendants.[11] While the prosecutor did reference Mr. Swaim's testimony in closing argument, that portion of actual testimony was elicited by Defendant Johnson during his cross-examination of Mr. Swaim. Furthermore, CardFlex President Andy Phillips was not called as a witness by the prosecution, but was called by the defense as a witness in its case-in-chief.

---

[6] Mar. 14, 2016 Transcript, docket no. 1555, filed June 27, 2016.

[7] *Compare* Proposed Jury Instruction 43A, docket no. 1085-1, filed January 28, 2016, *with* Jury Instruction 42, docket no. 1403, filed March 25, 2016.

[8] Motion to Dismiss at 2-3.

[9] *Id*. at 2.

[10] *Id*.

[11] March 2, 2016 Trial Transcript at 3679:11-14 and 3682:13.

> It is not misconduct for the prosecution to use accurate testimony in its closing argument.
>
> [Q]uestions of context and emphasis are what opening and closing statements are about. The prosecutor is entitled to argue to the jury that it should draw reasonable inferences from the evidence to support the government's theory of the case. . . . If defense counsel believed [the] remarks were unimportant or subject to a different interpretation, he was free in his turn to make such arguments to the jury in his own closing.[12]

In the defense closing arguments, each defendant took the opportunity to address and rebut the government's statements and inferences that Johnson now claims were improper.

Johnson also claims that the prosecution knew that the CardFlex witnesses' testimony was untrue. "When seeking a mistrial based on the government's alleged use of perjured testimony, the movant must establish that (1) the testimony at issue was false, (2) the testimony was material, and (3) the prosecutor nevertheless knowingly and intentionally relied on that testimony."[13] In his attempt to show that the prosecution knew that Cardflex witnesses would lie on the stand, Johnson submits two short audio recordings.[14]

Neither audio clip contains the entire context or conversation. The first 10-second clip "came from a secretly made recording of a plea negotiation meeting between Jeremy Johnson, his then-attorney Nathan Crane, and prosecutors"[15] in September 2012. Mr. Crane's letter agreeing to meet and negotiate with the prosecution included several agreed conditions, signed by all parties,[16] including: "The parties agree that any statements made by a government attorney or a government agent cannot be used against the United States in any document or in any

---

[12] *United States v. Dazey*, 403 F.3d 1147, 1170 (10th Cir. 2005).

[13] *United States v. Crockett*, 435 F.3d 1305, 1317 (10th Cir. 2006).

[14] Motion to Dismiss at 2 nn.1-2.

[15] Response at 9.

[16] Letter from Nathan A. Crane, Attorney for Jeremy Johnson, to Brent Ward and Robert C. Lunnen, Assistant United States Attorneys (Sept. 13, 2012) at 2-3, exhibit H to Response, docket no. 1383-3.

proceeding including: motions, hearings, trial, or cross-examination of any government witness."[17] Johnson has clearly violated the terms of that condition.

The context of the second clip is unknown.[18] But neither clip is a proper exhibit presented in its entirety; nor do they support Johnson's argument that the prosecution used perjured testimony. In contrast, the prosecution demonstrates that Mr. Swaim and Mr. Phillips testified consistently with what they had told the prosecution in separate interviews spanning several years.[19] Accordingly, Johnson has failed to establish that the testimony at issue was false or that the prosecutor knowingly and intelligently relied on false testimony.

### Reference to Contacting Wells Fargo Bank

Johnson ascribes misconduct to the prosecutor's question in closing argument that "'If iWorks had wanted to contact Wells Fargo, could they have done it?'"[20] Johnson then claims that this statement was made "knowing full well that iWorks had contacted Wells Fargo, that the calls were recorded, that defendants attempted to admit the recordings as evidence, and that the United States successfully kept them out."[21]

It is hard to understand how asking this unanswered question is misconduct. Johnson attempts to support the misconduct allegation with recordings of phone calls he made to Wells

---

[17] *Id*. at 2.

[18] "The provenance of the second clip is unknown to the United States as yet, since it has not had an opportunity to review the full recording and the defendant has refused to disclose what the recording is, where it came from, or even the identity of the other parties to the conversation." Response at 9 n.11.

[19] Memorandum of Interview of Will Swaim (Dec. 6, 2011), exhibit A to Response, [docket no. 1383-1](docket no. 1383-1); FBI 302 of Interview of Will Swaim (Mar. 25, 2014), exhibit B to Response, [docket no. 1383-2](docket no. 1383-2); Memorandum of Interview of Andy Phillips (Dec. 6, 2011), exhibit C to Response, [docket no. 1383-3](docket no. 1383-3); Memorandum of Interview of Andy Phillips (Feb. 4, 2013), exhibit D to Response, [docket no. 1383-4](docket no. 1383-4); FBI 302 of Interview of Andy Phillips (May 2, 2013), exhibit E to Response, [docket no. 1383-5](docket no. 1383-5); FBI 302 of Interview of Andy Phillips (June 5, 2013), exhibit F to Response, [docket no. 1383-6](docket no. 1383-6); Memorandum of Interview of Andy Phillips (Jan. 14, 2016 ), exhibit G to Response, [docket no. 1383-7](docket no. 1383-7).

[20] Motion to Dismiss at 3.

[21] *Id*.

Fargo in February 2016.[22] These are the same recordings that were inadmissible at trial because they were neither relevant nor made during the time the charges at issue occurred in 2009-2010.[23] These recordings do not show that Johnson contacted Wells Fargo during the charged time frame and they do not support the accusation of misconduct.

### Reference to Wells Fargo Terminating Accounts

Johnson claims that it was misconduct for the prosecutor to state "'Wells Fargo terminated the iWorks accounts.'"[24] Johnson argues "that Wells Fargo only asked to have the accounts terminated *after* the FTC has [sic] made the request to do so. Mr. Johnson was not premitted [sic] to admit evidence of the FTC's involvment [sic] of the iWorks account closure during trial."[25]

Any discussion regarding the civil action brought by Federal Trade Commission (FTC) in the District of Nevada was barred by the pretrial ruling[26] on the fully briefed motion in limine.[27] Evidence presented at trial supported that Wells Fargo closed the accounts for reasons other than FTC involvement.[28] Therefore, the prosecutor did not commit misconduct by abiding by the pretrial ruling and not discussing the FTC action.

---

[22] Transcript of Phone Call from Jeremy Johnson to Wells Fargo (undated; uncertified), exhibit 1 to Motion to Dismiss, docket no. 1376-1. Recordings of the phone calls are identified by a link to Johnson's Google Drive in footnote 4 of the Motion to Dismiss. The recordings were not submitted as exhibits to the Motion to Dismiss.

[23] Docket Text Order, docket no. 1339, filed March 11, 2016.

[24] Motion to Dismiss at 3.

[25] *Id*.

[26] Docket Text Order, docket no. 940, filed January 29, 2015.

[27] Motion in Limine to Exclude Evidence of FTC Action Against CardFlex and Mach 1/Blaze, docket no. 788, filed December7, 2015; Response to Government's Motion in Limine to Exclude Evidence of FTC Action Against CardFlex and Mach 1/Blaze (Doc. 788), docket no. 851, filed December 14, 2015; Defendants' Joint Response to Government's Motion to Preclude Introduction of the FTC Suit Against Government Witensses [sic], docket no. 855, filed December 14, 2015.

[28] *See*, *e.g.*, Exhibits 860, 881, 882 and 883.

**Reference to Wells Fargo Fines**

Johnson's final allegation of misconduct is that the prosecutor stated during the rebuttal argument, "'Wells Fargo was fined millions of dollars'."[29] Johnson complains that this statement was "designed to mislead the jury into believing that iWorks had caused a loss to Wells Fargo bank when in fact Mr. Lunnen is well aware that no such loss ever occurred . . . knowing that the defendants were barred from presenting any evidence in this case showing that Wells Fargo had not suffered any loss."[30]

The prosecutor's statement was supported by evidence admitted at trial.[31] The testimony at trial established that the fines were assessed and then passed down to the merchant and paid by iWorks.[32] The prosecution never argued that the assessed fines created a loss to the bank. Instead, the prosecution asserts that the "point in discussing the evidence of the fees was . . . [that] the fees both provided a motive to the defendants to hide their processing, and a reason that Wells Fargo Bank would not knowingly accept iWorks as a client again."[33] The reference to the fines does not rise to the level of prosecutorial misconduct.

## CONCLUSION

Johnson has not identified any statements that would require dismissal or mistrial under Tenth Circuit precedent.

> A prosecutor's improper statement to the jury is harmless unless there is reason to
> believe that it influenced the jury's verdict. In assessing whether the misconduct
> had such an impact, we consider the trial as a whole, including the curative acts of
> the district court, the extent of the misconduct, and the role of the misconduct
> within the case. . . . To warrant reversal, the misconduct must have been flagrant

---

[29] Motion to Dismiss at

[30] *Id*. at 3-4.

[31] *See* Exhibit 927.

[32] Response at 14; *See, e.g.*, Feb. 11, 2016 Trial Transcript at 746:23-24; 748:8-11; 823:10-17, [docket no. 1532](docket no. 1532), filed June 15, 2016.

[33] Response at 14-15.

enough to influence the jury to convict on grounds other than the evidence presented.[34]

None of the statements Johnson challenges show prosecutorial misconduct. Furthermore, neither Johnson nor Riddle made any objections to the statements during the closing argument.[35] Additionally, any misstatements that might have occurred were abated by specific jury instructions: "Statements, arguments and questions by lawyers are not evidence."[36] "You are not to consider the opening statements and the closing arguments of counsel as evidence."[37] "If any reference by me or by the attorneys to matters of evidence does not coincide with your own recollection, it is your recollection which should control during your deliberations."[38]

## ORDER

IT IS HEREBY ORDERED that the Motion to Dismiss,[39] filed by Defendant Johnson and joined by Defendant Riddle, is DENIED.

Signed July 21, 2016.

BY THE COURT

_____
District Judge David Nuffer

---

[34] *United States v. Ivy*, 83 F.3d 1266, 1288 (10th Cir. 1996) (internal quotations and citations omitted).

[35] *Dazey*, 403 F.3d at 1170 ("When trial counsel lodges no objection at trial to the prosecutor's comments, we review claims of prosecutorial misconduct during closing argument for plain error.").

[36] Jury Instruction 6, docket no. 1403.

[37] Jury Instruction 15, docket no. 1403.

[38] Jury Instruction 23, docket no. 1403.

[39] Docket no. 1376.