# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>v.<br><br>JEREMY JOHNSON,<br><br>         Defendant. | **ORDER DENYING MOTION FOR A NEW TRIAL AND DENYING MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT**<br><br>Case No.2:11-cr-501-DN<br><br>District Judge David Nuffer |

At the close of the government's case on March 7, 2016, counsel for Defendant Scott Leavitt made and argued a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure.[1] Defendant Jeremy Johnson joined in the motion.[2] After all parties were heard on the motion, it was later denied.[3]

Later, on March 25, 2016, after a six week trial, the jury found Defendant Jeremy Johnson guilty on Counts 2 through 9 of the third superseding indictment for violations of 18 U.S.C. § 1014, making false statements to a bank.[4] Johnson filed a motion for a new trial[5] and a motion for judgment notwithstanding the verdict,[6] renewing the motion under Rule 29 of the Federal Rules of Civil Procedure, and incorporates his arguments for that motion in the memorandum he filed in support of the motion for a new trial.[7] The government filed a

---

[1] *See* Minute Entry, docket no. 1313, filed March 7, 2016.

[2] *Id*.

[3] Docket Text Order, docket no. 1310, filed March 7, 2016.

[4] Jury Verdict, docket no. 1399, filed March 25, 2016.

[5] Motion for a New Trial, docket no. 1439, filed April 8, 2016.

[6] Motion for Judgment Notwithstanding the Verdict (Rule 29 Motion), docket no. 1440, filed April 8, 2016.

[7] Defendant Jeremy Johnson's Memorandum in Support of Motion for a New Trial and Motion for Judgment of Acquittal Notwithstanding the Verdict (Supporting Memorandum), docket no. 1441, filed April 8, 2016.

consolidated response to the motions.[8] In his reply memorandum,[9] after receiving the trial transcripts, Johnson abandoned some of his initial arguments and raised new arguments regarding erroneous evidentiary rulings. Because Johnson's reply brief contained new arguments, the court ordered[10] the government to file a sur-reply.[11] Having carefully considered all the filings, the motions for a new trial and judgment of acquittal are DENIED for the reasons discussed below.

Motion for a New Trial ....................................................................................................... 3
    Standard of Review....................................................................................................... 3
    Alleged Violation of Sixth Amendment Rights ........................................................... 4
        Application of *Luis v. United States* ...................................................................... 4
        Johnson's Pro Se Representation ........................................................................... 6
        Criminal Justice Act (CJA) Appointed Counsel.................................................... 7
    Alleged Errors in Trial ................................................................................................. 8
        Wrongful Exclusion of Immateriality Evidence ................................................... 8
        Alleged Improper Statements in Closing Argument............................................. 10
        Multiplicity Argument ......................................................................................... 10
        Unanimity Argument ........................................................................................... 11
        Sufficiency of the Evidence Claim ...................................................................... 12
    Other Erroneous Trial Rulings.................................................................................... 14
        Comments on Evidence and Outcome.................................................................. 18
        Pre-Trial Ruling on Loss ...................................................................................... 19
        Disqualification of Defense Expert....................................................................... 20
        Exclusion of Evidence During Cross Examination of SA Henrikson ................. 22
Rule 29 Motion for Judgment of acquittal ...................................................................... 23
ORDER ............................................................................................................................. 23

[8] United States' Response to Defendant Johnson's Motion for a New Trial and Motion for Judgment of Acquittal Notwithstanding the Verdict (Response), docket no. 1475, filed May 6, 2016.

[9] Jeremy Johnson's Reply Memorandum in Support of Motion for a New Trial and Motion for Judgment of Acquittal (Reply), docket no. 1525, filed June 16, 2016.

[10] Docket Text Order, docket no. 1550, filed June 21, 2016.

[11] United States' Sur-Reply to Arguments Made in Section VI of Defendant Johnson's Reply Memorandum in Support of Motion for a New Trial and Motion for Judgment of Acquittal (Sur-Reply), docket no. 1573, filed on July 6, 2016.

## MOTION FOR A NEW TRIAL

Johnson raises six principal arguments in his motion for a new trial.  The first argument (and its subparts) alleges Sixth Amendment violations requiring a new trial. The remaining arguments are based on alleged errors during trial. None of the arguments rise to the level of requiring a new trial.

### Standard of Review

Under Rule 33(a) of the Federal Rules of Criminal Procedure "the court may vacate any judgment and grant a new trial if the interest of justice so requires." But "[a] motion for a new trial is not regarded with favor"[12] and it "should be granted only with great caution."[13] "Thus, an 'alleged error by the trial court constitutes grounds for granting a new trial only where the trial court concludes that, absent the alleged error, a jury would likely have reached a contrary result.'"[14]

When reviewing motions for a new trial and judgments of acquittal, the evidence is sufficient to support a conviction if "a reasonable jury could find a defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government and drawing reasonable inferences therefrom."[15] A reviewing court may not weigh conflicting evidence, consider credibility of witnesses, "or second-guess the fact-finding decision of the jury."[16] The evidence is evaluated "by considering the collective inferences to be drawn from the evidence as a whole."[17] The Court "owe[s] considerable deference to the jury's verdict."[18]

---

[12] *United States v. Herrera*, 481 F.3d 1266, 1269-70 (10th Cir. 2007).

[13] *United States v. Trujillo*, 136 F.3d 1388, 1394 (10th Cir.1998) (internal citations and quotations omitted).

[14] *United States v. Santistevan*, No. 11-cr-00406, 2012 WL 5363372, *1 (D. Colo. Oct. 31, 2012) (quoting *Richins v. Deere & Co*., 231 F.R.D. 623, 625 (D.N.M.2004)).

[15] *United States v. Irving*, 665 F.3d 1184, 1194 (10th Cir. 2011) (internal quotations and citations omitted).

[16] *Id*.; *United States v. Renteria*, 720 F.3d 1245, 1253 (10th Cir. 2013).

[17] *Irving*, 665 F.3d at 1194.

**Alleged Violation of Sixth Amendment Rights**

**Application of *Luis v. United States***

On March 30, 2016, five days after the verdict was announced in this case, the Supreme Court issued its decision in the criminal case *Luis v. United States*.[19] Johnson claims that this decision supports his argument that his "Sixth Amendment rights were violated when he was denied access to funds not traceable to the crime for which he was charged."[20]

In *Luis*, the defendant was charged with crimes related to healthcare fraud.[21] The government alleged that Luis had fraudulently obtained nearly $45 million, much of which she had already spent.[22] In an effort to preserve the remaining $2 million, the government sought, and the trial court issued, a pretrial order freezing those assets under 18 U.S.C § 1345(a)(2) to preserve it "for payment of restitution and other criminal penalties."[23] Both the prosecution and the defendant agreed that the freeze order would prevent the defendant from using her own funds, not connected to the crime, to hire an attorney to represent her in the criminal case. "Although the District Court recognized that the order might prevent Luis from obtaining counsel of her choice, it held 'that there is no Sixth Amendment right to use untainted, substitute assets to hire counsel.'"[24]

Luis appealed the order, arguing that being unable to use her own funds, untainted by the crime, was a violation of her Sixth Amendment right to hire counsel of her choice, and the

---

[18] *United States v. Dewberry,* 790 F.3d 1022, 1028 (10th Cir. 2015) (internal quotations and citations omitted).

[19] 136 S. Ct. 1083 (2016).

[20] Supporting Memorandum at 2.

[21] *Luis*, 136 S. Ct. at 1087.

[22] *Id.*

[23] *Id.* at 1088.

[24] *Id.*

Eleventh Circuit affirmed the trial court.[25] The Supreme Court granted certiorari, and found that Luis had "a Sixth Amendment right to use her own 'innocent' property to pay a reasonable fee for the assistance of counsel."[26] The Court vacated the judgment of the Court of Appeals and remanded for further proceedings.[27] All of these proceedings occurred pretrial and within the context of the criminal trial.

Johnson claims that, as in *Luis*, his Sixth Amendment rights were violated when the court-ordered receiver in the civil Federal Trade Commission (FTC) action in the District of Nevada[28] would not release funds frozen by court order for Johnson to hire a defense attorney in the criminal case in the District of Utah. But the facts presented in *Luis* are vastly different than what occurred between Johnson's criminal and civil cases proceeding in different jurisdictions. By the time Johnson was indicted in the criminal case, the civil action against him by the FTC had been proceeding from some time, and a Receiver had been appointed over the Johnson's assets by court order.[29] That Preliminary Injunction Order specifically states that the District of Nevada court has "exclusive jurisdiction . . . over the Assets or Documents of the Receivership Defendants."[30] The receivership assets are distinctly different from assets frozen under criminal statutes. Receivership assets are held pursuant to equitable powers under Rules 65 and 66 of the Federal Rules of Civil Procedure in the civil matter. Defendant's assets held by the receiver in a civil case were never mentioned or addressed in *Luis*. Unlike *Luis*, there was never any pretrial restraint of assets under criminal forfeiture statutes in Johnson's criminal case. And under the

---

[25] *Id.*

[26] *Id.* at 1096

[27] *Id.* at 1096.

[28] Case No. 2:10-cv-2203 (D. Nev.).

[29] Preliminary Injunction Order, docket number 130 in Case No. 2:10-cv-2203 (D. Nev.), filed February 10, 2011, attached as exhibit R to Response, docket no. 1475-18.

[30] *Id*. at 32.

facts of *Luis*, only the restraint of defendant's untainted assets, frozen pretrial under the criminal forfeiture statutes would result in a Sixth Amendment violation. Consequently, there was no Sixth Amendment violation when Johnson was denied access to funds to hire an attorney when the funds were held by the receiver pursuant to court order in a civil case in another jurisdiction.

**Johnson's Pro Se Representation**

Johnson argues that his Sixth Amendment right to counsel was violated when he was "forced" to represent himself pro se because his court appointed attorney, Ms. Rebecca Skordas, had a conflict of interest based on her representation of Justin Lund.[31] Although the magistrate judge had already determined that Ms. Skordas did not have a conflict, the judge had an ex parte hearing in chambers on December 3, 2015 to fully resolve the matter in Johnson's presence.[32] Ms. Skordas was directed to explain the full scope of her representation of Lund, which she did:

> Mr. Lund had been subpoenaed by the FTC to appear in a deposition. He failed to appear at the deposition and a district court judge here … issued a warrant for his arrest. Um, he contacted me and retained me to clear the warrant. The – the general scope of the representation had to do with the reasons why he did not appear. I was able to get the warrant recalled and arranged for another deposition with the FTC. Mr. Lund hired Mary Anne Wood to represent him at that deposition, and she reviewed the facts with him, she prepped him for the deposition, she appeared at the deposition, and that was the end of my involvement.

> Sometime later, the U.S. Attorney's Office had apparently reviewed that deposition and requested an interview of Mr. Lund. Ms. Wood and Mr. Lund called me to inquire and to make certain that Mr. Lund was being treated as a fact witness and was not a subject or target of any investigation.

> I appeared briefly at that interview to satisfy myself that there were no – that Mr. Lund did not need my representation in that matter. Once I was satisfied that that was the case, that he was simply a fact witness, I excused myself and I

---

[31] Supporting Memorandum at 8-10

[32] *See* Hearing Tr. (December 3, 2015), docket no. 1462, filed April 26, 2016, attached as exhibit BB to Response, docket no. 1475-28.

didn't remain at the rest of the meeting. And that has been, at least with respect to this case, my only representation of Mr. Lund.[33]

After fully exploring the full scope of Ms. Skordas's representation of Mr. Lund, the judge found no conflict with her continued representation of Johnson. Johnson never appealed the magistrate judge's findings. Instead, Johnson chose to represent himself pro se.[34]

At the hearing on Johnson's motion to proceed pro se, the Lund conflict came up once again. The magistrate judge again reiterated that Ms. Skordas did not have a conflict.[35] After this lengthy hearing, an order regarding pro se appearance,[36] and having several days to consider his decision go pro se,[37] Johnson freely chose to represent himself at trial.[38] He was not "forced" to do so. There was no violation of his Sixth Amendment right.

**Criminal Justice Act (CJA) Appointed Counsel**

Johnson complains that because court appointed CJA counsels' payments were delayed and the CJA pay scale is too low, his Sixth Amendment rights were violated. Johnson further alleges that overcharging by the prosecution forced appointed counsel to waste limited resources.[39]

There is no law to support the argument that the "low" CJA pay scale deprives defendants of their Sixth Amendment right to representation. The argument is unfounded. Further, the argument that delayed payments to CJA counsel caused a Sixth Amendment violation is also unfounded. All CJA counsel appointed to represent Johnson continued working

---

[33] *Id.* 7:22-8:21.

[34] Minute Entry, docket no. 942, filed December 30, 2015; Hearing Tr. (December 30, 2015), docket no. 1464, filed April 26, 2016, attached as exhibit CC to Response, docket no. 1475-29.

[35] Hearing Tr. (December 30, 2015) 17:8-18:18.

[36] Order Regarding Pro Se Appearance and Role of Standby Counsel, docket no. 943, filed December 30, 2015.

[37] Hearing Tr. (December 30, 2015) 58:13-17.

[38] Order, docket no. 949, filed January 4, 2016.

[39] Supporting Memorandum at 10-12.

diligently on his case. When Greg and Rebecca Skordas were appointed in July 2015, they asked for, and were granted, six more months to prepare for trial.[40] None of the CJA counsel on this case ever cited lack of pay as a basis for a continuance. The magistrate judge continually reminded Johnson and the defendants that he would approve funding for any extra help they needed to be prepared to go to trial on time.[41] At the hearing on Johnson's motion to proceed pro se, the Skordases said they would be happy to continue representing Johnson.[42] There is nothing in the record to establish that a lack of CJA payments infringed on Johnson's Sixth Amendment right to counsel.

Similarly, there is no support for the argument that the prosecution "overcharged" in the indictment to squander CJA resources or impinge Johnson's Sixth Amendment rights to counsel. Further, it is well settled that the decision whether to prosecute and what charges to file is left solely to the prosecutorial discretion of the executive branch, not the judiciary.[43] A judge does not have the authority to tell the prosecutor how many crimes to charge or which crimes to prosecute.[44] There is no evidence that "overcharging" denied Johnson his Sixth Amendment rights.

**Alleged Errors in Trial**

**Wrongful Exclusion of Immateriality Evidence**

Johnson asserts that a new trial is required because evidence that the number of employees on the merchant account applications was "immaterial" in Wells Fargo's

---

[40] Order Setting Trial Date and Excluding Time From Speedy Trial Act Calculation, docket no. 592, filed August 13, 2015.

[41] *See, e.g.,* Hearing Tr. (December 3, 2015) 20:8-12.

[42] Hearing Tr. (December 30, 2015) 20:8-21:1.

[43] *United States v. Zabawa,* 39 F.3d 279, 284 (10th Cir. 1994).

[44] *Id.*

consideration of the applications was improperly excluded.[45] In advancing this argument,

Johnson assumes that that only reason the jury convicted on counts 2-9 was because those

applications include the number of employees, whereas the applications associated with counts

10-11, the counts for which he was acquitted, do not include employee numbers.[46]

Johnson then argues that the jury instruction of the fourth element of 18 U.S.C. § 1014

was flawed because it did not contain a test on immateriality. The elements instruction was taken

directly from the Tenth Circuit Pattern Instructions which does not require an instruction on

immateriality.

Counts 2-9 in the Superseding Indictment charged that Johnson

stated and caused to be stated false information on merchant account applications
for one or more of the following entries of the merchant account applications
listed in the chart below:

• Number of employees

• Other currently/previously owned businesses

• Number of years in business

• Owner/Officer certification

….

• Months of merchant statements from previous processing,

---

[45] Supporting Memorandum at 13-21.

[46] The government identifies the source of this argument as the public statements of a juror. The government correctly asserts that "this juror's post-trial public comments are inadmissible, as they do not fall within the exceptions in Fed. R. Evid. 606(b)(2)." Response at 37 n.174. "Rule 606(b) is a rule of evidence, but its role in the criminal justice process is substantive: it insulates the deliberations of the jury from subsequent second-guessing by the judiciary. Jury decision-making is designed to be a black box: the inputs (evidence and argument) are carefully regulated by law and the output (the verdict) is publicly announced, but the inner workings and deliberation of the jury are deliberately insulated from subsequent review. . . . Juries provide no reasons, only verdicts." *United States v. Benally,* 546 F.3d 1230, 1233 (10th Cir. 2008).

when, as defendants well knew, such statements on the merchant account applications were false[.]"[47]

Johnson does not argue that all of the alleged false statements were immaterial to Wells Fargo, just that the number of employees was immaterial. The jury could have returned a guilty verdict based on any of the false statements contained in the counts. The court did not exclude evidence of immateriality. Johnson was free to cross examine any of the bank employee witnesses that testified regarding the materiality of the statements. The fact that he chose not to do so does not create error on the part of the trial court. There was no error in failing to include an immateriality instruction.

**Alleged Improper Statements in Closing Argument**

Johnson argues again, this time through counsel, that the prosecutors made improper arguments during their closing and rebuttal arguments.[48] Johnson raised these same arguments in his earlier filed pro se motion to dismiss.[49] These arguments have already been considered and ruled upon.[50]

**Multiplicity Argument**

Johnson argues that he has been subjected to double jeopardy because counts 2-9 "violated the principles of multiplicity and duplicity."[51] "Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior."[52] Multiplicity claims in the indictment

---

[47] Third Superseding Indictment at 19, docket no. 584. In order to reduce the length of the trial, the parties agreed that "web page" and "web site URLs, Passwords, and Domain Names" would not be included as part of the false statements under 18 U.S.C. § 1014. This left five alternative false statements under the counts on which the jury could base their counts. *See* Response at 38 n.178.

[48] Motion at 21-24.

[49] Motion to Dismiss (or for Mistrial) for Prosecutorial Misconduct During Closing Argument, docket no. 1376, filed March 21, 2016.

[50] Memorandum Decision and Order Denying Pro Se Motion to Dismiss, docket no. 1591, filed July 21, 2016.

[51] Supporting Memorandum at 25.

[52] *United States v. Barrett*, 496 F.3d 1079, 1095 (10th Cir.2007).

"must be raised by pretrial motion."[53] Johnson never filed a pretrial motion on a multiplicity claim. Thus, the multiplicity claims will only be considered "to the extent they raise the possibility of multiple sentences for the same offense."[54] Because the court may only consider the multiplicity claim when there is a possibility of multiple sentences for the same offense, and there is no such possibility based on the counts of conviction, the multiplicity argument does not provide grounds for a new trial.

**Unanimity Argument**

In his unanimity argument, Johnson claims that the jury instructions did not state that the jury "needed to find unanimity as to one of five offered reasons to convict, before a finding of 'guilty' could be reached. The jury verdict form here did not require the jury to make a finding as to any count, other than a mere finding of 'guilty' or 'not guilty.'"[55] Johnson says a new trial is required because of this "inability to conclude that the jury was unanimous in its findings."[56]

Here, the jury was properly instructed that the "verdict must be unanimous."[57] "In this circuit, as in most others, it is assumed that a general instruction on the requirement of unanimity suffices to instruct the jury that they must be unanimous on whatever specifications they find to be the predicate of the guilty verdict."[58] Although there were five alternatively alleged false statements in counts 2-9, the jury was free to convict based on any (or more than one or all) of the alleged false statements in each application. There was no error in failing to include a special verdict form for the jury to identify which statement it found false.

---

[53] Fed. R. Crim. P. 12(b)(3)(B)(ii).

[54] *United States v. Morehead*, 959 F.2d 1489, 1506 (10th Cir. 1992).

[55] Supporting Memorandum at 27.

[56] *Id.* at 27-28.

[57] Instruction 84, docket no. 1403, filed March 25, 2016.

[58] *United States v. Phillips*, 869 F.2d 1361, 1366 (10th Cir. 1988) (internal quotations and citations omitted).

**Sufficiency of the Evidence Claim**

The Third Superseding Indictment[59] included the charging language for aiding and abetting in each court. Thus, when the jury convicted Johnson of counts 2-9 of the Superseding Indictment,[60] he was convicted of violations of 18 U.S.C. § 1014, False Statement to a Bank and 18 U.S.C. § 2, Aiding and Abetting[61] in that offense. "The law in this area is clear: it is well established that aiding and abetting is not an independent crime under 18 U.S.C. § 2; it simply abolishes the common-law distinction between principal and accessory."[62] "To aid and abet another to commit a crime it is necessary that a defendant in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, and that he seek by his action to make it succeed."[63]

There is no dispute that Johnson was President and sole owner of iWorks.[64] The email record establishes he was the one who made final decisions and that Ryan Riddle, Scott Leavitt, Bryce Payne, and Loyd Johnston, among others, directed reports and requests for decisions to him.

On June 10, 2009, Ryan Riddle wrote an email[65] to Johnson outlining "the proposed processing plan moving forward for Iworks.[sic]" The four page document provided specific direction to Loyd Johnston about monitoring processing to make sure "that nothing slips through the cracks" to "[give] us the best opportunity to process long term, make the most money, and

---

[59] Third Superseding Indictment, docket no. 584, filed August 5, 2015.

[60] Jury Verdict, docket no. 1399, filed March 25, 2016.

[61] "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

[62] *United States v. Cooper*, 375 F.3d 1041, 1049 (10th Cir. 2004) (internal quotations and citations omitted).

[63] *Rufai*, 732 F.3d at 1190 (internal quotations and citations omitted).

[64] Exhibit 834.

[65] Exhibit 722.

keep risks to a minimum." Riddle reflected his familiarity with the need to keep chargebacks at a low level.

> The Grant account that has been at Pivitol ended up last month being .04 tenths of a percent : ) I think that you will also understand our reasoning for not wanting to run anything too risky (knowing it will blow) after you've read the email, as it will really affect the upsell biling [sic] and complaints.

The first step in the new plan was a new set of merchant accounts, "set up in iWorks name with Jeremy as the guarantor and corp president. We want this account to be obvious to Visa so they can see what we are processing."

But the plan overview also included a network of corporations, each with multiple merchant accounts, in names of nominees *other than* Jeremy Johnson, using corporations established in neighboring states:

> Each of these accounts will have their own corporation and each of these corporations will have two MID's to support that coprs [sic] program. The 5 corporations are being set up in names *other* than Jeremy's (We will be using these three people.. Scott Muir, Andy Johnson, and Lacy Holm – 2 corps for Andy, 2 corps for Scott, and 1 corp for Lacy) we have 2 of these corps in progress as CA companies and the others will be set up in Nevada. We will be setting up additional corporations to be available for additional accounts/programs as they come up for Iworks Core processing needs. These "additional" corps will be set up under any of the three names previously mentioned unless Jeremy provides any new names.[66]

On June 24, 2009, Mr. Johnson responded to Mr. Riddle and said that he approved of his plan, but wanted some additions:

> I am ok with this but I still want back up merchant accounts (even if we just use them a tiny bit to keep them open) and I want many different corps so all processing is broken out in many places and I want the ability to put shit processing in one of those corps not tied to us at all knowing full well it will blow up in a few months. But I am 100% with you on your plan but I want this stuff too even if we never use it.[67]

---

[66] *Id.* (emphasis, capitalization and spelling in original).

[67] Exhibit 726.

Just a few days later, on June 29, 2009, Johnson also directed that accounts should be set up "so they have no idea its me and he will set up several accounts and each will have a dynamic descriptor so we can process whatever on them anytime but I want several separate accounts under different corps so they cant tie them together etc."[68]

In early July 2009, Johnson met with Andy Phillips, President and CEO of Cardflex. Johnson reported "I met with the owner of cardflex and he said they will open any account in any name or corp we want and I just sign this gurantee letter and send it with the app and they wont need allot of financial info from the corps owners."[69]

Evidence was clear that the use of the corporate form, nominee owner, maildrop addresses, and single purpose bank accounts was all designed to allow iWorks to process credit card transactions without detection by the card system. Detailed planning documents such as Exhibit 693, 722, 752, 777, 783, 785, 786, 791, 794, 796, 823, 829, and 832 show that merchant account establishment was a well-planned and highly coordinated activity directed by Johnson.

The many email exchanges establish that Johnson had a direct connection to the illegal conduct alleged in counts 2-9: that he knew and directed what nominee owners would be assigned to the merchant accounts in the charged counts and that Johnson was aware of and authorized the false statements that were then submitted to the bank. The jury could reasonably conclude that Johnson was directing and participating in providing false information to the bank to create merchant accounts under new names not associated with iWorks or Jeremy Johnson.

## Other Erroneous Trial Rulings

Johnson argues that a new trial is required because he was prejudiced by alleged erroneous rulings, comments on evidence, and treatment of defendants and defense counsel

---

[68] Exhibit 729 (punctuation, spelling in original).

[69] Exhibit 732 (capitalization, punctuation, spelling in original).

during trial.[70] Johnson then cites to an unpublished Ninth Circuit case[71] to support his assertion that "[a]ll defendants were prejudiced by the demonstration of bias or hostility toward the counsel of one defendant. That would be especially true when Mr. Mumford was the only attorney at trial."[72] It is difficult to reconcile this argument with the facts. It is hard to imagine that Johnson was so prejudiced by the claimed comments directed to Mr. Mumford, when Scott Leavitt, the defendant Mr. Mumford represented at trial was acquitted of all charges. How could the alleged bias against counsel for an acquitted defendant reflect on a convicted defendant? The Leavitt acquittal shows that all defendants were not prejudiced by the alleged actions.

Under Rule 611(a) of the Federal Rules of Evidence, "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune."[73] "But, however unpleasant, occasional judicial shortness with an attorney, even in the presence of the jury, does not warrant a new trial."[74]

---

[70] Reply at 58-91.

[71] *United States v. Onyeabor,* ___ F. App'x ___, 2016 WL 166023 (9th Cir. April 27, 2016).

[72] Reply at 59 n.38.

[73] *Liteky v. United States,* 510 U.S. 540, 555-56, (1994).

[74] *United States v. Conway,* 53 F. App'x 872, 878 (10th Cir. 2002.

The examples listed by the parties will not be rehashed, but most are addressed in full context in the chart below, as provided in the government's sur-reply.[75]

| Allegation in Reply | Sur-reply Citation to Full Exchange and Explanation of What the Record Shows |
|---|---|
| Page 60 of Reply citation to Transcript Volume II at 404:9-23. | The full exchange at 403:18 – 404:23 shows Mr. Mumford yet again asking Mr. Elliott questions about documents he had never seen, arguing with the court after it sustained objections, and asking the same questions after the court sustained objections to them. |
| Page 60-61 of Reply citation to Transcript Volume III at 642:14 – 643:2. | The full exchange at 642:14 – 643:20 shows that the court commented that counsel should not instruct the jury. Mr. Mumford rephrased the question in a manner that was not objectionable and got the answer he wanted. And as the Reply points out, the court held the government to the same standard in how it phrased its questions. |
| Page 61 of the Reply citation to Transcript Volume VI at 1370:15-24. | The full exchange at 1370:6 – 1372:3 reveals that Mr. Mumford was repeatedly asking questions by beginning "Do you agree with me," which is an objectionable form that amounts to counsel testifying. The court let this go on for six days before instructing Mr. Mumford to stop asking questions in this manner. The transcript also shows that objections were overruled at this time and Mr. Mumford was allowed to ask his properly phrased questions. |
| Page 61-62 of the Reply citation to Transcript Volume VII at 1548:14-2 | The full exchange is at 1548:1 – 1550:4. The court's comment about not testifying came after Mr. Mumford had indeed testified instead of asking a question. Then Mr. Mumford was able to ask the questions he wanted. The court similarly instructed government counsel not to testify on cross examination. *See, e.g.*, 3/8/16 Tr. of S. Fisher, at 120:3-5 (instructing Mr. Kennedy to "be sure to proceed by questions"); id., at 127:20-22 (sustaining an objection on the ground Mr. Kennedy was testifying). |
| Page 62 of the Reply citation to Transcript Volume VII at 1550:20-1551:5. | Mr. Mumford arguing with the court to the point that the court told him to move on. |

[75] Sur-Reply at 12-14.

| | |
|---|---|
| Page 62 of the Reply citation to Transcript Volume VII at 1579:1-13. | The full exchange at 1578:7 – 1580:22 shows that Mr. Mumford was attempting to introduce a piece of evidence he had never produced in reciprocal discovery, had not provided to the court prior to attempting to use it, and that he then tried to skirt those roles by then claiming he was just using it to refresh recollection, and then tried to use an improper procedure to refresh recollection. |
| Pages 62-63 of the Reply citation to Transcript Volume VII at 1587:14-23. | The full exchange at 1585:19 – 1590:20 shows that Mr. Mumford had asked thirteen questions in a row without comment from the court in which the witness's answer was that she did not remember dates. Mr. Mumford then stated he was trying to refresh recollection, and it was at this point—after thirteen consecutive questions that the witness could not answer—that the court said the examination was failing and inefficient. The parties then stipulated as to the dates of the meetings. |
| Page 63 of the Reply cites to an exchange between the court and Johnson located at Transcript Volume VII at 1601:11-23. | The full exchange at 1601:11 – 1602:7 shows that Mr. Johnson was trying to use an unmarked and unproduced document with the witness. The court did not allow this. When Mr. Johnson apologized, the court told him not to apologize and stated that the court has to make a record. |
| Page 63 of the Reply cites to an exchange between the court and Mr. Riddle located at Transcript Volume VII at 1610:13-25. | The full exchange at 1609:22 – 1611:1 reveals the court giving a pro se defendant every opportunity to explain how his questions were relevant, allowing that defendant to ask him a question, and then explaining to that defendant the basis of rulings. |
| Pages 63-64 of the Reply cite to an exchange between the court and Mr. Riddle located at Transcript Volume VII at 1618:1-16. | The full exchange is at 1618:1-25 and shows that the court allowed the answer to an irrelevant question to stand and then instructed the pro se defendant to ask questions relevant to the case. The defendant then asked a proper bias question which the court allowed. |
| The final exchange cited in the Reply on the hostility point is at Pages 64-65 and refers to Transcript Volume VIII at 1851:8-22 and 1853:8-25. | This occurred outside the presence of the jury. Regardless, the transcript of the whole conference located at 1840:24 – 1877:5 shows that after the jury was excused that day the court was dealing with the issue of impeachment evidence and was yet again educating pro se defendants on the fact that they had to make a timely record.<br>The court instructed them to file a motion if they wanted to go back and use that audio recording evidence. |

When taken in context of the entire exchange, the examples demonstrate "ordinary efforts at courtroom administration" in a long, complicated trial with two legally untrained pro se defendants and an experienced trial attorney who admitted he demonstrated "bad habits" during

trial and that "the pro se defendants . . . were learning my bad habits."[76] These efforts at

courtroom administration during trial do not rise to the level of requiring a new trial.

**Comments on Evidence and Outcome**

Johnson claims a new trial is warranted because the court used the word "appeal" in front

of the jury. The use of that word was to emphasize why a rule of evidence needed to be identified

in an objection.

> MR. MARCUS MUMFORD: Objection, Your Honor.
> MR. JOHNSON: Objection, Your Honor.
> MR. MARCUS MUMFORD: Assumes facts not in evidence.
> THE COURT: And your objection, Mr. Johnson?
> MR. JOHNSON: I think it's an improper question.
> THE COURT: And why? I have to have a rule.
> MR. JOHNSON: What's that?
> THE COURT: I have to have a rule. And you want one for appeal, too. So what's the basis for the objection?[77]

Johnson complains that the court asked him to state his objection by referencing the

applicable Federal Rule of Evidence after Johnson objected without citing a rule. The court was

instructing Johnson that to properly object, he had to cite to a rule of evidence to support his

objection for the record. There was no suggestion that the jury should convict and Johnson would

have to appeal.[78]

Johnson's other claim of error was when the court stated in response to a prosecution

objection, that Mr. Mumford was "establishing an element of your case."[79] The exhibit Mr.

Mumford was referring to during this cross examination was a check[80] that supported a money

---

[76] Trial Tr. vol. XVII (March 2, 2016) 3907:9-13, docket no. 1541, filed June 15, 2016.

[77] Trial Tr. vol. XIV (February 26, 2016) 3098:24-3099:2-7, docket no. 1517, filed June 6, 2016.

[78] *See United States v. Hutching*, 75 F.3d 1453, 1457-57 (10th Cir. 1996) (rejecting an argument that the trial court had erred by "informing the jury of the possibility of appellate review" because "the trial court was merely explaining how and why a record was made" and did not minimize the jury's responsibility).

[79] Trial Tr. (February 16, 2016) 1275:2-10, docket no. 1534, filed June 15, 2016.

[80] Exhibit 333.

laundering count.[81] This exhibit was already in evidence and the comments added nothing to the prosecution's case. Moreover, Johnson was acquitted on count 86, so it is difficult to understand how he was prejudiced by the comment.

Furthermore, the jury was instructed, more than once, not to consider the court's comments:

"Nothing I have said during the trial or in these instructions should be interpreted by you as giving or intimating my opinion as to what has or has not been proven in this case or as to what are or are not the facts of this case."[82]

"If I have said or done anything in this case that makes it appear I have an opinion about the guilt or innocence of a defendant, disregard it. You are the sole judges of the facts and should in no way be influenced by what I have done here except to follow my instructions on the law."[83]

Viewing the record as a whole, these comments are not "so prejudicial that [they] denied [the defendant] a fair, as opposed to perfect trial."[84]

**Pre-Trial Ruling on Loss**

Johnson again claims error in the pretrial ruling that loss to the bank was irrelevant in this case[85] and affiliate fraud was not a defense to the charges.[86] Johnson claims that allowing the prosecution to introduce evidence of the bank's fees and fines due to iWorks excessive chargebacks was an attempt to show loss to the bank. However, as has been explained, the fees

---

[81] Count 86.

[82] Jury Instruction 15, docket no. 1403, filed March 25, 2016.

[83] Jury Instruction 30.

[84] *United States v. Erickson,* 561 F.3d 1150, 1166 (10th Cir. 2009) (internal quotations and citations omitted).

[85] Docket Text Order, docket no. 944, filed January 2, 2016.

[86] Docket Text Order, docket no. 930, filed December 29, 2016.

and fines presented occurred before the charged conduct. The prosecution's purpose in presenting the fee evidence

> was to show the motive behind the alleged conspiracy and scheme and artifice to defraud, i.e., the need to obtain new merchant accounts in names other than Johnson and iWorks. The United States publicly announced in its trial brief prior to trial exactly what it was going to do in its "Phase 1" including evidence about the fees and assessments levied against acquiring banks, and the termination of iWorks by these banks.[87]

The testimony about fees never violated the pre-trial orders and no evidentiary doors were opened based on this testimony. The testimony was presented to show motive, not to establish a loss to the bank. Further, defendants were allowed to elicit testimony that the banks did not necessarily pay the fees, because they were passed down from the bank to the merchant.[88]

A new trial is not required because there was no violation of pretrial orders and no error in the handling of this evidence.

## Disqualification of Defense Expert

Johnson asserts that a new trial is required because the court "erroneously excluded the Defendant's expert, Gene Hoffman."[89]

> Expert testimony is admissible if it meets the standard set forth in Rule 702 of the Federal Rules of Evidence: 'A witness who is qualified as an expert by knowledge, skill, experience, training, or education' can provide opinion testimony 'if:
>
> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> b) the testimony is based on sufficient facts or data;

---

[87] Sur-Reply at 22 (citing to United States Trial Brief at 9-12, docket no. 979, filed January 12, 2016.

[88] Trial Tr. (Feb. 9, 2016) 251:11-22; 332:13-333:19, docket no. 1530, filed June 15, 2016; Trial Tr. vol. XV (February 29, 2016) 3254:12-3255:2, docket no. 1539, Filed June 15, 2016; Trial Tr. (March 1, 2016) 3489:2-13.

[89] Reply at 80.

c) the testimony is the product of reliable principles and methods; and

d) the expert has reliably applied the principles and methods to the facts of the case.'[90]

The district court has a gatekeeper role under Rule 702 and "'must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact before, permitting a jury to assess such testimony.'"[91]

> In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion. Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in Daubert.[92]

It is within the discretion of the trial court to determine when and how to perform its gatekeeping function under Daubert, and may satisfy its gatekeeper role when asked to rule on a motion in limine.[93]

Prior to Mr. Hoffman's testimony, the prosecution filed a motion in limine to limit his opinion testimony,[94] and requested to voir dire Mr. Hoffman before he testified.[95] When Mr. Hoffman took the stand, after testifying about his knowledge, skills, experience, training and education, the prosecution was permitted to voir dire regarding his testimony.[96] The court set forth complete findings and conclusions on the record for disqualifying Mr. Hoffman as an

---

[90] *United States v. Vann*, 776 F.3d 746, 757 (10th Cir. 2015) (quoting Fed. R. Evid. 702).

[91] *Id.* (quoting *United States v. Rodriquez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006).

[92] *Id.* at 757-58 (internal quotations and citations omitted).

[93] *Goebel v. Denver and Rio Grande Western R.R., Co.,* 215 F.3d 1083, 1087 (10th Cir. 2000).

[94] Motion in Limine to Limit the Opinion Testimony of Defense Expert Gene Hoffman, docket no. 1357, filed March 15, 2016.

[95] Trial Tr. vol. XXVI (March 15, 2016) 5887:6 – 5888:15, docket no. 1522, filed June 6, 2016.

[96] Trial Tr. (March 16, 2016) 5898-5946, docket no. 1507, filed June 2, 2016.

expert.[97] Johnson does not challenge or attempt to show how the court these findings are erroneous. Consequently, as to this point, Johnson's motion is denied.

**Exclusion of Evidence During Cross Examination of SA Henrikson**

Special Agent Jason Henrikson testified during the government's case in chief.[98] Henrikson's testimony provided the foundation for the government to introduce three summary exhibits and one demonstrative exhibit. "Henrikson did not testify to any substantive facts or circumstances regarding any of the defendants, witnesses, iWorks operations or any or fact or circumstance probative of the guilt or innocence of the defendants."[99]

After Henrikson's testimony, Mr. Mumford and Johnson argued that they should be allowed to impeach Henrikson using extrinsic evidence that included an affidavit Henrikson wrote in support of a search warrant on May 17, 2013 and a memorandum of interview he wrote on June 28, 2013. The affidavit was under seal.[100] Johnson and Mumford stated on the record they had not read the affidavit. The court heard arguments from the parties, asked clarifying questions, and discussed the application of Rule 608(b). Later the same day, after an *in camera* review of the proposed documents, an order was entered denying the use of the extrinsic evidence for impeachment because it "does not reveal information 'probative of the character for truthfulness or untruthfulness,'" it would violate the prohibition on the use of extrinsic evidence under Federal Rule of Evidence 608(b), and because of the risk of confusion of the issues and waste of time.[101]

---

[97] *Id.* at 5959:20-5963:1.

[98] Trial Tr. 1083 (February 12, 2016), docket no. 1533, filed June 15, 2016.

[99] Sur-Reply at 34.

[100] The affidavit had been unsealed by order, only for Johnson's then counsel Rebecca and Greg Skordas. *See* Docket Text Order, docket no. 593, filed August 13, 2015.

[101] Order Regarding Use of Search Warrant Affidavit as Impeaching Evidence, docket no. 1184, filed February 12, 2016 (quoting Fed. R. Evid. 608).

Now Johnson claims it was error not to allow him to use the extrinsic evidence to impeach Henrikson regarding his bias and prejudice against Johnson.[102] This is a new argument that Johnson never advanced in court. The ruling at the time was based on Johnson's (and Mr. Mumford's) argument that the extrinsic evidence was probative of untruthfulness. Trying to advance a different argument post-trial does not render erroneous the ruling at the time.

## RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL

Johnson advanced no arguments for a judgment of acquittal, stating that he "renews the motion [made at the close of the government's case, which was denied], and incorporates the grounds stated for the motion at the time, along with the arguments set forth above, and urges the court to reconsider its ruling on the Rule 29 motion."[103] The court declines to do so, finding that the reason for its ruling is valid.

## ORDER

IT IS HEREBY ORDERED that the Motion for a New Trial[104] and the Rule 29 Motion for Judgment Notwithstanding the Verdict[105] are DENIED.

Signed July 28, 2016.

BY THE COURT

District Judge David Nuffer

---

[102] Reply at 89.

[103] Supporting Memorandum at 31.

[104] Docket no. 1439.

[105] Docket no. 1440.